**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 7, 2005**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                          No. 125436

GEVON RAMON DAVIS,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

The issue presented is whether our Double Jeopardy Clause[1] prohibits the state of Michigan from prosecuting defendant for the theft of an automobile from Michigan after defendant pleaded guilty in Kentucky, where he was apprehended, to a charge of attempted theft of the automobile by unlawful taking. We overrule *People v Cooper*[2] and hold that our Double Jeopardy Clause does not bar

_____

[1] Const 1963, art 1, § 15.

[2] 398 Mich 450; 247 NW2d 866 (1976).

defendant's successive state prosecution in Michigan because the entities seeking to prosecute defendant in this case—Kentucky and Michigan—are separate sovereigns deriving their authority to punish from distinct sources of power. The decision of the Court of Appeals affirming the trial court's order granting defendant's motion to quash the information is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

## Facts

It is not disputed that defendant stole a 1999 Chevrolet Malibu, valued at $8,200, and drove the automobile from Michigan to Kentucky, where he was apprehended.

On August 22, 2001, defendant was charged in Kentucky with theft by unlawful taking or disposition of property valued at $300 or more.[3]  On September 4, 2001, defendant pleaded guilty to an amended charge of attempted theft by unlawful taking or disposition of property valued at $300 or more.[4]  He was sentenced to 365 days in jail, to be suspended during two years' probation.

On March 22, 2002, defendant was charged in Genesee County, Michigan, with unlawfully driving away a motor

---

[3] Ky Rev Stat Ann 514.030.

[4] Ky Rev Stat Ann 506.010 and 506.020 address criminal attempt.

2

vehicle and with receiving and concealing stolen property.[5] Defendant moved to quash the information on the basis of double jeopardy, asserting that the double jeopardy provision of the Michigan Constitution[6] and the case *People v Cooper* prohibited a second prosecution in Michigan for the theft of the automobile, unless the interests of Michigan and Kentucky were substantially different. The trial court granted defendant's motion on June 11, 2002, and dismissed the charges, concluding that the case was controlled by *People v Cooper*.

The prosecutor appealed, and the Court of Appeals affirmed in an unpublished opinion per curiam.[7] The Court of Appeals concluded that *Cooper* was still the controlling law because only three justices from this Court would have overruled *Cooper* in *People v Mezy*.[8]

This Court granted the prosecutor's application for leave to appeal.[9]

---

[5] MCL 750.413 and 750.535(3)(a).

[6] Const 1963, art 1, § 15.

[7] *People v Davis*, unpublished opinion per curiam of the Court of Appeals, issued November 25, 2003 (Docket No. 242207).

[8] 453 Mich 269; 551 NW2d 389 (1996).

[9] 470 Mich 870 (2004).

## Standard of Review

Whether the information should have been quashed on the basis of double jeopardy is a question of law that this Court reviews de novo. *People v Nutt,* 469 Mich 565, 573; 677 NW2d 1 (2004). In interpreting a constitutional provision, the primary rule of constitutional interpretation has been described by Justice Cooley:

> "A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. 'For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.'"[*Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971)(quoting Cooley's Const Lim 81)(added emphasis omitted).]

## Analysis

At issue in the present case is whether our Double Jeopardy Clause prohibits charging and trying defendant in Michigan for the theft of an automobile from Michigan after he pleaded guilty in Kentucky, where he was apprehended, to attempted theft of the automobile. Answering this question requires us to determine whether this Court correctly

4

construed our Double Jeopardy Clause and correctly applied the doctrine of dual sovereignty in *People v Cooper*.[10]

Michigan's Double Jeopardy Clause provides, "No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15. The federal provision is substantially similar, providing "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." US Const, Am V. In *Nutt, supra*, we explained that the protections provided by the Double Jeopardy Clause include: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. *Nutt, supra* at 574.

In *Nutt,* we further concluded that

---

[10] Justice Kelly in dissent asserts that the majority answers the wrong question when it decides whether this Court "correctly applied the doctrine of dual sovereignty in *People v Cooper*." "The appropriate question," she asserts, "is whether the *Cooper* decision correctly interpreted our state's constitution." *Post* at 9. The dissent is mistaken. There is no difference between the "question" as phrased by the majority and the "question" as phrased by the dissent; both are ways of stating the issue in this case, which is whether Michigan's Constitution prohibits charging and trying defendant in Michigan for the theft of an automobile from Michigan after he pleaded guilty in Kentucky, where he was apprehended, of attempted theft of the automobile.

5

> in adopting art 1, § 15, the people of this state intended that our double jeopardy provision would be construed consistently with Michigan precedent and the Fifth Amendment.  [*Id.* at 591.]

This conclusion was based, in part, on an examination of the record of the constitutional convention in 1961.  *Id.* at 588-590.  In 1835, Michigan's Constitution, art 1, § 12, contained language similar to that of the federal constitution:  "No person, for the same offense, shall be twice put in jeopardy of punishment."  *Nutt, supra* at 588.  In 1850 and 1908, the language of this provision was changed to "No person, after acquittal upon the merits, shall be tried for the same offense."  Const 1850, art 6, § 29; Const 1908, art 2, § 14; *Nutt, supra* at 588; 1 Official Record, Constitutional Convention 1961, p 465.  At the 1961 constitutional convention, it was proposed that the provision be revised to once again mirror the language of the federal constitution.  *Nutt, supra* at 589; 1 Official Record, Constitutional Convention 1961, p 465.  In discussing the proposed amendment at the constitutional convention, it was noted by Delegate Stevens that even when the language differed from the federal provision in 1850 and 1908, this Court had "'virtually held that this means the same thing as the provision in the federal constitution . . . .'"  1 Official Record, Constitutional Convention 1961, p 539.  This historical context supports *Nutt's*

6

conclusion that Michigan's double jeopardy provision should be construed consistently with the Fifth Amendment.

In *Bartkus v Illinois,*[11] the defendant was tried in federal district court for the robbery of a federally insured savings and loan association and was acquitted. After his acquittal, a state grand jury indicted the defendant on robbery charges from the same robbery. The defendant was tried, convicted, and sentenced to life imprisonment. On appeal, the defendant asserted that his state conviction was barred by double jeopardy. The United States Supreme Court disagreed, concluding that successive state and federal prosecutions based on the same transaction or conduct were not barred by the Double Jeopardy Clause. 359 US at 122-124.[12] The Court reasoned:

---

[11] 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959).

[12] Justice Kelly references the more than thirty years of case law on which *Bartkus* was based but then asserts that the foundation for *Bartkus* is "questionable" and that it was undermined by *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). *Post* at 3, 5. We disagree. As noted in *Bartkus*, the body of precedent on which it relied provided "irrefutable evidence that state and federal courts have for years refused to bar a second trial even though there had been a prior trial by another government for a similar offense," and concluded that "it would be disregard of a long, unbroken, unquestioned course of impressive adjudication for the Court now to rule that due process compels such a bar. *Bartkus, supra* at 136. Moreover, the *Heath* case discussed later in this opinion makes it clear that the United States Supreme Court meant what it said in *Bartkus*.

It would be in derogation of our federal system to displace the reserved power of States over state offenses by reason of prosecution of minor federal offenses by federal authorities beyond the control of the States. [*Id.* at 137.]

In *People v Cooper,* the defendant was acquitted in federal court of attempting to rob a bank. He was then tried in state court on charges stemming from the same criminal act. 398 Mich at 453. In addressing the defendant's argument that his trial in state court was barred by double jeopardy, this Court acknowledged the holding in *Bartkus* that successive prosecutions were not barred by double jeopardy, but decided that a "trend in United States Supreme Court decisions" suggested "that the permissibility of Federal-state prosecutions as a requirement of our Federal system [was] open to reassessment." *Id.* at 457. The Court opined that the trend it perceived required increased scrutiny of the dual sovereignty doctrine, and that double jeopardy may bar successive prosecutions. *Id.* at 459-460.[13] The Court explained:

---

[13] The *Cooper* Court cited *Elkins v United States,* 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960), and *Murphy v Waterfront Comm of New York Harbor,* 378 US 52; 84 S Ct 1594; 12 L Ed 2d 678 (1964), as cases that undermined the *Bartkus* decision. But neither case specifically addressed whether successive prosecutions were barred by double jeopardy. The issue in *Elkins* was whether "articles obtained as the result of an unreasonable search and seizure by state officers, without involvement of federal

8

The dual sovereignty notion is predicated on the belief that state criminal justice systems should be strong. Additionally, there is the fear that Federal legislation which covers a criminal act may involve interests unlike the interests which state legislation covering the same criminal act may seek to promote. We agree that where an individual's behavior violated state and Federal laws which are framed to protect different social interests, prosecution by one sovereign will not satisfy the needs of the other sovereign. In such a case, given the Federal government's preemptive power, the inability of the state to vindicate its interests would truly be an "untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines. It would be in derogation of our federal system". *Bartkus, supra,* at 137 (Frankfurter, J.). Therefore, we cannot accept defendant's proffered alternative to the dual sovereignty doctrine which would prohibit *all* successive prosecutions by two sovereigns for the same act.

However, the interest of the Federal and state governments in prosecuting a criminal act frequently coincide. When state and Federal interests do coincide, prosecution by one sovereign will satisfy the need of the other. [*Id.* (emphasis in original).]

Thus, the *Cooper* Court held "that Const 1963, art 1, § 15 prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the

---

officers, [may] be introduced in evidence against a defendant over his timely objection in a federal criminal trial." 364 US at 208. And the issue presented in *Murphy* was "whether one jurisdiction within our federal structure may compel a witness, whom it has immunized from prosecution under its laws, to give testimony which might then be used to convict him of a crime against another such jurisdiction." 378 US at 53.

jurisdiction which initially prosecuted are substantially different." *Id.* at 461.

Justice Kelly in dissent makes much of the *Cooper* Court's statement that its decision rested on Michigan's Constitution. *Id.* at 461. But simply stating this conclusion does not make it so. A close examination of *Cooper* reveals that it was not decided on the basis of different language in our Constitution or on the basis of a different history behind Michigan's adoption of a double jeopardy bar. Indeed, no analysis was made at all regarding any of the text or history of art 1, § 15, and apart from the conclusory statement at the end of the *Cooper* opinion that the decision was based on Michigan's double jeopardy provision, there is nothing in the opinion actually linking this statement to the actual language or history of Michigan's double jeopardy provision. Rather, the case was decided as it was because the *Cooper* Court simply questioned *Bartkus* and mistakenly perceived a "trend" in United States Supreme Court law.[14] Thus, although the *Cooper* Court was wrong in its understanding of federal law, it did look to federal law in construing

---

[14] Similarly, the dissent by Justice Kelly is based on nothing more that its disagreement with the *Bartkus* decision and its desire to substitute its own double jeopardy policy for the double jeopardy analysis that the language and history of Michigan's double jeopardy provision requires.

10

Michigan's double jeopardy provision, just as the majority does in this case.

Nine years after this Court's decision in *Cooper*, the United States Supreme Court decided *Heath v Alabama,*[15] a case that demonstrates that the *Cooper* Court was incorrect about any "trend" narrowing the dual sovereignty doctrine or the ability of states to prosecute successively. In *Heath*, the petitioner hired two men to kill his wife. The petitioner met the men in Georgia, just over the border from his Alabama home, and led the men back to his home. The men kidnapped the petitioner's wife from the home; her body was later found on the side of a road in Georgia. The petitioner pleaded guilty in Georgia to a murder charge in exchange for a sentence of life imprisonment. He was then indicted in Alabama for the capital offense of murder during a kidnapping, convicted, and sentenced to death. 474 US at 83-86. The petitioner asserted that the Alabama prosecution constituted double jeopardy. The United States Supreme Court granted certiorari limited to the double jeopardy issue and "requested the parties to address the question of the applicability of the dual sovereignty doctrine to successive prosecutions by two States." *Id.* at 87.

---

[15] 474 US 82; 106 S Ct 433; 88 L Ed 2d 387 (1985).

The *Heath* Court determined that the dual sovereignty doctrine permitted successive prosecutions under the laws of different states.  The Court explained:

> The dual sovereignty doctrine, as originally articulated and consistently applied by this Court, compels the conclusion that successive prosecutions by two States for the same conduct are not barred by the Double Jeopardy Clause.
>
> The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government.  When a defendant in a single act violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct "offences."  *United States v. Lanza*, 260 U.S. 377, 382 (1922).  As the Court explained in *Moore v. Illinois*, 14 How. 13, 19 (1852), "[an] offense, in its legal signification, means the transgression of a law."  Consequently, when the same act transgresses the laws of two sovereigns, "it cannot be truly averred that the offender has been twice punished for the same offense; but only that by one act he has committed two offenses, for each of which he is justly punishable." *Id.,* at 20.
>
> In applying the dual sovereignty doctrine, then, the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns.  This determination turns on whether the two entities draw their authority to punish the offender from distinct sources of power.  See, *e.g., United States v. Wheeler*, 435 U.S. 313, 320 (1978); *Waller v. Florida*, 397 U.S. 387, 393 (1970); *Puerto Rico v. Shell Co.,* 302 U.S. 253, 264-265 (1937); *Lanza, supra, at* 382; *Grafton v. United States,* 206 U.S. 333, 354-355 (1907).  Thus, the Court has uniformly held that the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own "inherent sovereignty," not from the Federal Government.  *Wheeler, supra, at* 320, n. 14.  See *Abbate v. United States*, 359

12

U.S. 187, 193-194 (1959) (collecting cases); *Lanza, supra*. As stated in *Lanza, supra,* at 382:

> "Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

> "It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."

> See also *Bartkus v. Illinois,* 359 U.S. 121 (1959); *Westfall v. United States,* 274 U.S. 256, 258 (1927) (Holmes, J.)(the proposition that the State and Federal Governments may punish the same conduct "is too plain to need more than statement").

> The States are no less sovereign with respect to each other than they are with respect to the Federal Government. Their powers to undertake criminal prosecutions derive from separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment. [*Id.* at 88-89.]

The Court further explained that in cases where it had found the dual sovereignty doctrine inapplicable, it had done so "because the two prosecuting entities did not derive their powers to prosecute from independent sources of authority." *Id.* at 90. The Court explicitly rejected the balancing of interests approach adopted by this Court in *Cooper*. *Id.* at 92-93.

The correctness of the *Cooper* decision, particularly in light of the United States Supreme Court's decision in

*Heath*, has already been questioned.  In *People v Mezy,*[16] three justices[17] stated that they would overrule *Cooper* and hold that the double jeopardy provisions of the Michigan Constitution and the United States Constitution did not bar successive state and federal prosecutions.  453 Mich at 272.  The justices noted that the United States Supreme Court had consistently held that successive state and federal prosecutions did not violate double jeopardy.  *Id.* at 278-280.  Further, the justices noted that there was no "'compelling'" reason to afford greater protection under the Michigan double jeopardy provision than the federal and that the two provisions should be treated as "'affording the same protections.'"  *Id.* at 280-281, quoting *People v Perlos*, 436 Mich 305, 313 n 7; 462 NW2d 310 (1990).[18]

Consistent with the United States Supreme Court decision in *Heath* and with the reasoning of three justices of this Court in *Mezy*, we now overrule *People v Cooper*.[19]

---

[16] 453 Mich 269; 551 NW2d 389 (1996).

[17] The opinion was written by Justice Weaver and signed by Justices Boyle and Riley.

[18] The justices also noted that, contrary to the *Cooper* Court's decision, the majority of states hold that both the United States Constitution and their constitutions allow for dual prosecutions by the state and federal governments. 453 Mich at 281 n 14.

[19] As recently noted, although we overrule precedent with caution, the doctrine of stare decisis is not applied

14

As noted in *Nutt*, the common understanding of the people at the time that our double jeopardy provision was ratified was that the provision would be construed consistently with the federal double jeopardy jurisprudence that then existed. Applying the reasoning of *Bartkus,* which was clearly reaffirmed in *Heath*, the entities seeking to prosecute in this case—Kentucky and Michigan—are separate sovereigns deriving their authority to punish from distinct sources of power. Therefore, the prosecution of defendant in Michigan for the theft of the automobile is not barred by double jeopardy.[20]

---

mechanically to prevent the Court from overruling previous decisions that are erroneous. We may overrule a prior decision when we are certain that it was wrongly decided and "'less injury will result from overruling than from following it.'" *People v Moore,* 470 Mich 56, 69 n 17; 679 NW2d 41 (2004), quoting *McEvoy v Sault Ste Marie,* 136 Mich 172, 178; 98 NW 1006 (1904). The United States Supreme Court decision in *Heath* clearly demonstrates that the *Cooper* Court was wrong about any "trend" that it thought it observed in United States Supreme Court case law concerning dual sovereignty and double jeopardy. Further, the *Cooper* Court failed to consider the language of our double jeopardy provision or its historical context. Additionally, there are no relevant "reliance" interests involved and therefore overruling *Cooper* would not produce any "practical real-world dislocations." See *Robinson v Detroit,* 462 Mich 439, 466; 613 NW2d 307 (2000). Therefore, we overrule the erroneous decision made by the *Cooper* Court.

[20] Justice Kelly in asserts that by looking to federal law to guide the interpretation of our double jeopardy provision, we are somehow giving away the people's sovereignty. *Post* at 18. We disagree. Rather, it is the dissent's interpretation that would cede this state's sovereignty to another state by foreclosing prosecution in

15

The decision of the Court of Appeals affirming the trial court's order granting defendant's motion to quash is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

Elizabeth A. Weaver
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

---

Michigan, when there is no evidence in our constitutional history that the people of Michigan sought, in adopting Const 1963, art 1, § 15, to cede any of this state's sovereignty to the federal government or another state. Any abrogation based on double jeopardy principles of Michigan's sovereign power to prosecute offenders is a decision properly left to the people by amending the Constitution, and not to this Court. Further, we note that the Michigan Legislature *has* statutorily forbidden successive prosecutions only with regard to prosecutions concerning illegal drugs. MCL 333.7409 provides: "If a violation of this article is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state."

16

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                        No. 125436

GEVON RAMON DAVIS,

    Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

This Court has granted the prosecutor's request to further weaken the Double Jeopardy Clause of the Michigan Constitution. The majority agrees with the prosecutor that the state's Double Jeopardy Clause does not bar this Michigan prosecution, despite the fact that Kentucky has already convicted defendant of the same crime.

I dissent. Our decision in *People v Cooper*[1] provides the appropriate protection against double jeopardy to Michigan citizens and to others within the state's jurisdiction. The majority decision presents yet another instance in which this Court's majority disagrees with existing precedent, gives it short shrift, and changes

_____

[1] 398 Mich 450; 247 NW2d 866 (1976).

Michigan law. I strongly disagree with the majority's choice to overrule *Cooper*.

This case does not present one of those rare occasions that requires reversing a previous decision of the Court. I would affirm the ruling of the Court of Appeals and, in doing so, I would follow this Court's precedent in *Cooper*.

## I. Facts and Status of the Case

Defendant allegedly stole an acquaintance's car or acquired it after someone else stole it in Michigan. He then drove the car to Kentucky, where he was arrested. By agreement with the Kentucky prosecutor, defendant pleaded guilty of attempted theft by unlawful taking or disposition of property valued at $300 or more. Ky Rev Stat Ann 514.030.

Later, defendant was charged in Michigan for the same car theft. The prosecutor accused him of unlawfully driving away a motor vehicle (UDAA), MCL 751.413, and receiving and concealing stolen property with a value of $1,000 or more but less than $20,000. MCL 750.535(3)(a). On defendant's motion, the trial court quashed the information and dismissed the charges on the basis that they violated the Double Jeopardy Clause of the Michigan Constitution. Const 1963, art 1, § 15. The Court of Appeals affirmed the decision. *People v Davis,* unpublished

2

opinion per curiam of the Court of Appeals, issued November 25, 2003 (Docket No. 242207).

## II. Federal Double Jeopardy Jurisprudence

The United States Supreme Court determined in *Bartkus v Illinois*[2] that the Fifth Amendment's Double Jeopardy Clause[3] allows successive prosecutions by the federal and state governments.

But *Bartkus* rests on a questionable foundation. The opinion is premised on a concept of dual sovereignty that the United States Supreme Court began to recognize in dicta starting in the mid-nineteenth century.[4] The doctrine was not applied at common law. It was first utilized by the Court in 1922, in *United States v Lanza*, 260 US 377; 43 S Ct 141; 67 L Ed 314 (1922).

---

[2] 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959).

[3] The relevant portion of the federal Double Jeopardy Clause reads, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." US Const, Am V.

[4] See *Fox v Ohio*, 46 US 410; 12 L Ed 213 (1847) (a state may prosecute for passing false coin; the federal government may prosecute for counterfeiting; the former is a private wrong, while the latter is an offense directly against the federal government); *United States v Marigold*, 50 US 560; 13 L Ed 257 (1850) (federal statute and federal prosecution for uttering false coinage was constitutionally permissible); *Moore v Illinois*, 55 US 13; 14 L Ed 306 (1852) (Illinois law and federal fugitive slave law dissimilar in essential purpose, definition of the offenses, and type of punishment each statute authorized).

3

In 1937, the United States Supreme Court held that the Fourteenth Amendment did not incorporate the Fifth Amendment's Double Jeopardy Clause against the states. *Palko v Connecticut,* 302 US 319; 58 S Ct 149; 82 L Ed 288 (1937), overruled by *Benton v Maryland*, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). In several earlier cases, the Court had allowed multiple state and federal prosecutions for the same offense. It had permitted the federal government to prosecute an offense for which a state court had already obtained a conviction. *Lanza, supra* at 382. Later, it had allowed states and the federal government to criminalize the same conduct. *Westfall v United States*, 274 US 256, 258; 47 S Ct 629; 71 L Ed 1036 (1927).

Then, in 1959, the United States Supreme Court in *Bartkus* allowed a state prosecution to proceed after the defendant had been acquitted of the charged offense in a federal court. It found that the federal Double Jeopardy Clause did not prohibit state prosecutions for state criminal offenses.

The reasoning of these cases was based on the argument that the Fifth Amendment's Double Jeopardy Clause was inapplicable to the states. Indeed, this was explicitly noted in *Bartkus,* in which Justice Frankfurter stated his

4

view that the Fourteenth Amendment did not apply the first eight amendments to the states. *Bartkus, supra* at 124.

In 1969, the Supreme Court rejected the idea that the Fifth Amendment did not apply to the states through the Fourteenth Amendment. In *Benton v Maryland*,[5] the Court held that the Fifth Amendment protection is "a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment." *Benton, supra* at 794. Because *Bartkus* was based on the belief that the Fifth Amendment had no application to the states, *Benton* undermined the reasoning of *Bartkus*.[6] See *Smith v United States,* 423 US 1303, 1307; 96 S Ct 2; 46 L Ed 2d 9 (1975) (Douglas, Circuit Justice).

---

[5] 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

[6] At least one commentator has recognized the paradox created by the dual sovereignty doctrine:

> The doctrine of selective incorporation, which makes the Double Jeopardy Clause applicable to the states, . . . depends upon the rationale that by enacting the Fourteenth Amendment the states surrendered a part of their sovereignty to the federal government. Yet, the dual sovereignty doctrine maintains that both the states and the federal government, bound by the same Double Jeopardy Clause because of their shared sovereignty, are separate sovereigns for purposes of assessing possible violations of the Clause. *See, e.g., Heath,* 474 U.S. [82; 106 S Ct 433; 88 L Ed 2d 387 (1985)]. [McAninch, *Unfolding the law of double jeopardy*, 44 SC L R 411, 425 n 104 (1993).]

5

The weak underpinnings of the *Bartkus* line of cases is highlighted when one considers the common law on which our system of constitutional jurisprudence is based. As Justice Black noted in his vigorous *Bartkus* dissent, and as legal scholars continue to note,[7] the English common law did not recognize the concept of dual sovereignty.

Justice Black pointed out that protection from double jeopardy is part of the common law of nations. *Bartkus, supra* at 154 (Black, J., dissenting), citing Batchelder, Former Jeopardy, 17 Am L R 735 (1883). In fact, international law recognizes that multiple prosecutions by separate nations violate fundamental human rights.[8]

---

[7] See, for example, Comment, *The dual sovereignty exception to double jeopardy: An unnecessary loophole*, 24 U Balt L R 177, 180 (1994), citing Comment, *Successive prosecution by state and federal governments for offenses arising out of the same act*, 44 Minn L R 534, 537 n 18 (1960); Harrison, *Federalism and double jeopardy: A study in the frustration of human rights*, 17 U Miami L R 306 (1963); Grant, *Successive prosecutions by state and nation: Common law and british empire comparisons*, 4 UCLA L R 1 (1956).

[8] See, e.g., International Covenant on Civil and Political Rights, art 14(7), 999 UNTS 171, 177 (1976). A nation may not extradite a person if doing so would expose that person to subsequent prosecution for the same crime. 1 Restatement Foreign Relations Law of the United States, 3d, § 476(1)(b), p 566. The protection from double jeopardy has been a part of our western civilization since at least Greek and Roman times and is a "'universal maxim of common law.'" *Bartkus, supra* at 151-153, (Black, J.,

6

Post-*Bartkus* cases also raised questions regarding whether the dual sovereignty doctrine on which *Bartkus* was based would survive unscathed. For instance, in *Elkins v United States*,[9] the Court rejected the dual sovereignty doctrine in the context of search and seizure. There, the Court held that where state authorities obtained evidence during a search that would have violated the Fourth Amendment, the evidence must be excluded at the federal level.

Likewise, in *Murphy v Waterfront Comm of New York Harbor*,[10] the Court refused to apply the dual sovereignty doctrine. It held that a state may not constitutionally compel a witness to testify when that testimony might be used against him in a federal prosecution. These decisions rejecting the application of the dual sovereignty doctrine in other contexts, coupled with the *Benton* decision, prompted comment by many courts, including the *Cooper* Court. The question was whether the dual sovereignty doctrine would continue to be applied in the double jeopardy context.

---

dissenting), quoting 2 Cooley, Blackstone's Commentaries, (4th ed, 1899), p 1481.

[9] 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960).

[10] 378 US 52; 84 S Ct 1594; 12 L Ed 2d 678 (1964).

More recently, though, the United States Supreme Court has held that successive prosecutions by individual states do not violate the Fifth Amendment's double jeopardy protection. *Heath v Alabama,* 474 US 82; 106 S Ct 433; 88 L Ed 2d 387 (1985). In *Heath*, the Supreme Court not only resurrected the dual sovereignty doctrine, it extended the doctrine to successive prosecutions by different states. No matter how flawed the reasoning of *Bartkus*, then, the Supreme Court has validated it. It has verified that, under current federal law, the dual sovereignty doctrine allows for successive prosecutions when they are initiated by different sovereigns.

This Court clearly does not have the power to overrule United States Supreme Court precedent in interpreting the Double Jeopardy Clause of the United States Constitution. On the other hand, we are not bound to adopt that Court's analysis of the federal constitution when we interpret the Michigan Constitution. This is especially true when the analysis is flawed. While the Court's decision regarding a similar constitutional provision provides guidance, the rights of Michiganians are not tied to what the Court chose to do with a federal constitutional provision.

Although the Michigan Supreme Court commented in *Cooper* on the direction it thought the United States

Supreme Court was headed, it grounded its decision on an interpretation of the Michigan Constitution. This was fitting. When determining the rights guaranteed to people in Michigan under the Michigan Constitution, our Court is not bound by later interpretations given the federal constitution by federal courts.

## III. The Michigan Constitution

This case is not about the federal constitution's Fifth Amendment double jeopardy protection. It is about the double jeopardy protection provided by the Michigan Constitution to those within the jurisdiction of this state. The majority claims that it must determine whether we "correctly applied the doctrine of dual sovereignty in *People v Cooper*." *Ante* at 5. The appropriate question is whether the *Cooper* decision correctly interpreted our state's constitution. I assert that it did.

The *Cooper* Court rejected the United States Supreme Court's one-sided view of dual sovereignty. The current majority suggests that the *Cooper* Court incorrectly applied dual sovereignty, whereas the *Cooper* Court specifically rejected it. Instead, it appropriately adopted a rule that balances the rights of the state with the fundamental rights afforded to the accused.

9

As Justice Denise Johnson of the Vermont Supreme Court observed, "[W]e do not need a unique state source to justify our differences with the interpretation of the federal Constitution. The concept of sovereignty gives state courts the right and the justification to disagree." Woltson, ed, *Protecting Individual Rights: The Role of State Constitutionalism*, Report of the 1992 State Judges Forum (1993), p 43, quoted in Shepard, *The maturing nature of state constitution jurisprudence*, 30 Val U L Rev 421, 439 (1996).

> [O]ur courts are not obligated to accept what we deem to be a major contraction of citizen protections under our constitution simply because the United States Supreme Court has chosen to do so. We are obligated to interpret our own organic instrument of government. [*Sitz v Dep't of State Police*, 443 Mich 744, 763; 506 NW2d 209 (1993).]

In interpreting the Michigan Constitution, "'the provisions for the protection of life, liberty and property are to be largely and liberally construed in favor of the citizen.'" *Lockwood v Comm'r of Revenue*, 357 Mich 517, 557; 98 NW2d 753 (1959), quoting *United States ex rel Flannery v Commanding Gen, Second Service Command,* 69 F Supp 661, 665 (SD NY, 1946).

The Double Jeopardy Clause in the Michigan Constitution currently reads, "No person shall be subject for the same offense to be twice put in jeopardy." Const

10

1963, art 1, § 15. To determine the parameters of this guarantee, we must examine the history of our state's constitutional and common-law heritage.

Before reaching statehood, Michigan accepted the common law of England as part of its legal heritage. The common law was applied when Michigan was part of the province of Upper Canada in 1792. At that time, the legislature of Upper Canada repealed Canadian Law and declared that "*resort should be had to the laws of England as the rule for the decision of* [real property and civil rights]." 1 Michigan Territorial Laws, Introduction, p viii (1871). Likewise, the Northwest Ordinance contained a provision indicating that the territories should apply the common law. Northwest Ordinance of 1787, art II.[11]

When the territory that would become Michigan shifted possession from England to the new United States of America, the common law remained. "It is a principle of universal jurisprudence that the laws, whether in writing or evidenced by the usage and customs of a conquered or ceded country, continue in force till altered by the new sovereign. . . . All that occurred here was the mere change of the sovereign power, *which left all rights and laws as*

---

[11] The 1783 Treaty of Paris finalized the boundaries between Canada and the United States.

11

*they had been*."  1 Michigan Territorial Laws, Introduction, pp x-xi (1871).  Furthermore, in 1795 the Governor and judges of the territory adopted an act declaring that the common law of England was the applicable law.  *Id.* at xi-xii.

The common law of England held that protection from double jeopardy extended to prosecutions by other sovereigns.  The practice in Great Britain in the seventeenth and eighteenth centuries was that prosecution by a different sovereign precluded England from retrying a defendant. See *State v Hogg*, 118 NH 262, 265-266; 385 A2d 844 (1978).

Michigan adopted its first constitution in 1835. At that time, its double jeopardy provision read, "No person for the same offense, shall be twice put in jeopardy of punishment." Const 1835, art 1, § 12. In 1850, the state constitution was expanded and reworded to read, "No person after acquittal upon the merits shall be tried for the same offense." Const 1850, art 6, § 29. Constitutional convention notes from 1850 suggest that the proponent of

this change considered it to be simply a clarification of the provision's language.[12]

After the 1850 Constitution was ratified, the Michigan Supreme Court had occasion to interpret this new language. It determined that the phrase "after acquittal on the merits" did not mean that jeopardy attached only after a verdict was rendered. Writing for the Court, Justice COOLEY stated:

> The present Constitution of this State was adopted in 1850, when all the tendencies of the day were in the direction of enlarging individual rights, giving new privileges, and imposing new restrictions upon the powers of government in all its departments. This is a fact of common notoriety in this State; and the tendencies referred to found expression in many of the provisions of the Constitution. Many common-law rights were enlarged, and given the benefit of constitutional inviolability; and if any were taken away, or restricted in giving new privileges, it was only incidentally done in making the general system more liberal, and, as the people believed, more just. Such a thing as narrowing the privileges of accused parties, as they existed at the common law, was not thought of; but, on the contrary, pains were taken to see that they were all enumerated and made secure. Some were added; and among other provisions adopted for that purpose was the one now under consideration. [*People v Harding*, 53 Mich 481, 485-486; 19 NW 155 (1884).]

---

[12] "Mr. C. [Delegate Crary] said he considered the language used in the section indefinite, and his amendment merely proposed language more definite and better understood." Report of the Proceedings and Debates in the Convention to Revise the Constitution of the State of Michigan, p 58 (1850).

The *Harding* Court, therefore, determined that the language used in the 1850 Constitution was meant to expand the rights our state's citizens had at common law. At common law, a person could be retried after an acquittal on the merits if the first court lacked jurisdiction. The language of the 1850 Constitution was intended to preclude this "great hardship." *Id.* at 486. "It was meant to give a privilege not existing at the common law; it had no purpose to take away any which before existed." *Id.*

A constitutional convention was next called in 1908, but that convention left the language of the double jeopardy provision untouched. During the 1961 constitutional convention, the double jeopardy provision again received attention. The convention notes suggest that the delegates were concerned only with the issue of when jeopardy attached. The actual language of the state constitution's double jeopardy provision indicated that the protection did not attach until a verdict of acquittal had been rendered. Yet, in *Harding,* the Michigan Supreme Court had determined that jeopardy attached long before the rendering of a verdict.

14

The delegates' discussion revolved solely around conforming the language regarding when jeopardy attached to the interpretation the Michigan courts had given it:

> Mr. Stevens: Mr. Chairman and delegates, the original wording of this was: "No person, after acquittal upon the merits, shall be tried for the same offense." The Supreme Court of Michigan, however, has virtually held that this means the same thing as the provision in the federal constitution,[13] which is what we have put in: "No person shall be subject for the same offense to be put twice in jeopardy."

> It is true that in the opinion of some of the jurists of the state this might make it a little bit easier for the state to appeal in some cases. Otherwise it makes no difference except it brings the provision of the constitution more clearly into the practice of this state. [1 Official Record, Constitutional Convention 1961, p 539.]

And later, Delegate Stevens noted:

> You would think from reading this, probably—and that is a matter of clarification—a layman might think that only after a person has been acquitted on the merits has he been put in jeopardy. That is not the fact under the decisions of the Michigan supreme court. He is better protected than that. There is nothing in here that I believe can be construed to in any way delete or reduce the rights of the defendant. [1 Official Record, Constitutional Convention 1961, p 540.]

---

[13] Interestingly, while this characterized the Michigan provision as meaning "virtually . . . the same thing as the provision in the federal constitution" with regard to when jeopardy attached, the *Harding* Court made no reference to the federal constitution. Its holding was grounded in our state's unique constitutional history.

Reference was made to the similarity between the proposed provision and the language of the United States Constitution, the delegates noting that "[t]he wording which we propose is that which is found in the vast majority of state constitutions." 1 Official Record, Constitutional Convention 1961, p 540 (Delegate Danhof). However, nothing suggests that they meant by the similarity in wording that all aspects of the Double Jeopardy Clause would be construed the same as other sovereigns' clauses, either then or afterward.

The only discussion at the convention centered on conforming the language of Michigan's Double Jeopardy Clause to the interpretation Michigan courts had given to that language. Silence regarding other aspects of the protection should not be construed to mean that the delegates considered federal case law the definitive authority regarding the meaning of our state provision. Rather, this silence should be taken to mean what it more likely signifies: a lack of consideration of any of the aspects of double jeopardy protection beyond the question of when jeopardy attaches.

This specific concern was carried through to the people when they voted on the new constitution. The Address to the People contains the following language:

16

> This is a revision of Sec. 14, Article II, of the present constitution. The new language of the first sentence involves the substitution of the double jeopardy provision from the U.S. Constitution in place of the present provision which merely prohibits "acquittal on the merits." *This is more consistent with the actual practice of the courts in Michigan.* [Emphasis added.]

In addition, the preface to the Address to the People states, "Traditional liberties and rights of the people were carefully reviewed and changes made are in the direction of clarifying and *strengthening them.*" (Emphasis added.)

Given the full history of our constitution, and the history of the 1961 constitutional convention, several things are clear. First, the sole concern in revising the Double Jeopardy Clause in our state constitution was to clarify that jeopardy attaches when a jury is sworn, as our courts had interpreted. It does not attach when a verdict is issued, as appeared from the language of the 1908 Constitution. Second, the language regarding the United States Constitution in the Address to the People simply informs us from where that language was derived.

The change in the Double Jeopardy Clause in the 1963 Constitution did not signal the people's intent to adopt the United States Supreme Court's interpretation of all aspects of double jeopardy protection, past and future.

17

Instead, the people intended to ratify what the Michigan courts had already held with regard to when jeopardy attaches.

Despite the history outlined above, the majority in *People v Nutt*[14] took this language to mean that the people intended to adopt the federal interpretation of the Double Jeopardy Clause. It assumed that the people knew what the United States Supreme Court had interpreted the federal Double Jeopardy Clause to mean, and that they agreed with it. It assumed that they were willing to accept all future interpretations that the federal courts applied to it. It assumed that they willingly gave away their sovereignty as a people and as a state by allowing the federal government to interpret our constitution for us.

I cannot agree with all those assumptions. I do not presume that the voters of our state intended that Michigan's Double Jeopardy Clause would be interpreted exactly as the federal provision is interpreted.

I have reviewed our common-law history before we became a state, our state's constitutional history, and the language in the Address to the People. It has become obvious to me that the people intended that the language of

---

[14] 469 Mich 565; 677 NW2d 1 (2004).

18

the state Double Jeopardy Clause was intended to mean what Michigan courts had said it means. See *Harding*, *supra*.

The holding in *Cooper* was grounded on the Michigan Constitution. This was specifically recognized in *People v Gay*,[15] in which the *Cooper* decision was reaffirmed and given retroactive effect. As Justice Levin noted, *Cooper* was a "reasoned and careful" analysis of the state constitution. *People v Mezy,* 453 Mich 269, 299; 551 NW2d 389 (1996) (Levin, J, dissenting).

*Cooper* protects the rights of Michigan's citizens. Unlike federal jurisprudence, it requires that the government balance those individual rights with the state's interest in preserving the public peace and protecting the public safety. *Cooper* held that Michigan's rights as a sovereign were generally vindicated when a defendant was brought to justice in another jurisdiction. But, it also recognized that there would be times when another sovereign's prosecution would not validate Michigan's interests. In those rare cases, *Cooper* allowed a successive prosecution:

> Const 1963, art 1, § 15 prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of

---

[15] 407 Mich 681, 710-711; 289 NW2d 651 (1980).

19

Michigan and the jurisdiction which initially prosecuted are substantially different. Analysis on a case-by-case basis cannot be avoided. [*Cooper, supra* at 461.]

The balancing test of *Cooper* protects a person's rights "to avoid (1) continued embarrassment, expense and ordeal; (2) being compelled to live in a continuing state of anxiety and insecurity; and (3) the possibility that even though innocent he may be found guilty through repeated prosecutions." *Cooper, supra* at 460, citing *United States v Wilson*, 420 US 332, 343; 95 S Ct 1013; 43 L Ed 2d 232 (1975), and *Green v United States*, 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957).

The facts that a court should consider in applying the Cooper balancing test include

whether the maximum penalties of the statutes involved are greatly disparate, whether some reason exists why one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interests in securing a conviction, and whether the differences in the statutes are merely jurisdictional or are more substantive. [*Cooper, supra* at 461.]

The *Cooper* Court's rejection of the dual sovereignty doctrine as a basis for allowing successive prosecutions, without reference to the defendant's fundamental interest in being free from double jeopardy, was unanimous.[16]

---

[16] Justice Coleman concurred in the result, but believed that Michigan should apply the "same-elements"

The majority uses *Heath* to attack the holding in *Cooper*. But *Cooper* does not rest on the decisions of the United States Supreme Court interpreting the federal constitution. It rests on the Michigan constitution. It depends on balancing the interest of the state in curbing criminal activity with the liberty interests of those within its jurisdiction. *Gay, supra* at 693-694.

As discussed, this is perfectly consistent with the intent of the 1961 constitutional convention delegates and with the intent of the people. Given the rejection of the *Bartkus* one-sided approach to dual sovereignty, later cases such as *Heath* that apply the same one-sided approach have no bearing on whether *Cooper* was correctly decided. The *Cooper* rule is necessary to protect the individual's interest, as well as the state's interest in rare cases where the state's interest is not vindicated by another sovereign's prosecution.

The defendant here is being forced to undergo multiple ordeals when he should be able to rely on the finality of his prosecution in Kentucky. He had an expectation that his guilty plea in Kentucky would end governmental action

test for determining when successive prosecutions are brought for the same offense. *Cooper*, *supra* at 463 (COLEMAN, J., concurring). In *Gay*, the Court unanimously agreed that the *Cooper* decision was entitled to retroactive application.

21

against him involving the car theft. Instead, the Kentucky guilty plea can now be used against him in the Michigan proceeding. Defendant will again be punished for the same activity for which he has already been punished in Kentucky.

*Cooper* specifically directs a case-by-case inquiry of whether the state's interests have been met. *Cooper, supra* at 461. It allows successive prosecutions when the interests of the two states are substantially different. The court considers the maximum penalties available, facts indicating that the other jurisdiction cannot be trusted to vindicate fully Michigan's interests, and whether the statutory differences are substantive or "merely jurisdictional." *Id.*

There is no evidence in the record before us that Michigan's interests have not been adequately protected by the proceedings in Kentucky. Defendant pleaded guilty in Kentucky to attempted theft of property having a value of more than $300. He was sentenced to one year's probation.

Defendant is charged in Michigan with UDAA and receiving stolen property worth $1,000 or more. These crimes are felonies punishable by not more than five years' imprisonment. Similarly, the Kentucky statute makes theft of property with a value of more than $300 a felony

22

punishable by not more than five years' imprisonment.  See Ky Rev Stat Ann 514.030 and 532.020(1)(a).

To conserve trial resources, Michigan prosecutors frequently offer a "plea bargain" to a defendant to plead guilty to a lesser offense.  The Kentucky prosecutor's willingness to offer defendant a plea to a lesser offense cannot be said to undermine our state's interests. Furthermore, the Michigan prosecutor in this case does not argue that Michigan's interests were compromised.

The facts of this case serve to show that *Cooper* is not, in fact, unworkable. The interests sought to be protected by each state's law are not substantially different. The interests of the state of Michigan are amply protected, while the interests of the individual are not ignored. The Double Jeopardy Clause was written not to protect the state or federal government, but to protect the individual.

To hold that Michigan will allow prosecution in our state after a federal or sister state prosecution for the identical act is to embrace a system of constitutional duality.  It enables a state to pursue a person who either has been found innocent or has paid the price for his crime to another sovereignty.  To harass the innocent, the acquitted, or the guilty person who has paid the price for

23

a crime in money or freedom is not compatible with constitutionally legitimate state action. To the contrary, it is at just such harassment that our state constitution takes aim.

The policy that weakens double jeopardy protections is not validated because both state and federal sovereignties combine to embrace it. It is incongruous to allow a state's basic constitutional policy, one integral to its sovereignty, to be frustrated as a consequence of the duality that allows that state to exist. Furthermore, it is inconsistent and ironic to use that federalism, which has been justified in the name of protecting freedom, to obliterate a fundamental right.

Rarely are Michigan's interests not vindicated after one fair test of guilt. Normally, the cause of justice is not served in the second pursuit of one who has been subjected to jeopardy for the same act in a different jurisdiction. To hold otherwise is to require an accused either to prove innocence twice or to pay twice for the same offense. The sole rationale for it is that the acts complained of took place where two layers of government coincide.

24

For almost thirty years, *Cooper* and its progeny have protected citizens and others subject to the jurisdiction of this state from the risk of

> (1) continued embarrassment, expense and ordeal; (2) being compelled to live in a continuing state of anxiety and insecurity; and (3) the possibility that even though innocent [we] may be found guilty through repeated prosecutions. [*Gay, supra* at 694, citing *Wilson, supra* at 343, and *Green, supra* at 187-188.]

See also *People v Herron,* 464 Mich 593, 601; 628 NW2d 528 (2001). *Cooper* correctly held that Michigan's Double Jeopardy Clause protects us from multiple prosecutions for the same crime. That protection exists as long as the state's interest is protected by a prosecution for the crime in another state or by the federal government. The Court in *Cooper* did not need to find a "different history behind Michigan's adoption of a double jeopardy bar"[17] to conclude that the Michigan Constitution protects us from multiple prosecutions for a single crime. As explained, that protection has been a bedrock principle of our common law for decades.

### IV. Fourteenth Amendment Due Process

The right to be free from double jeopardy is a fundamental right

---

[17] *Ante* at 7.

deeply ingrained in at least the Anglo-American system of jurisprudence . . . . [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [*Green, supra* at 187-188.]

As Justice Black once observed, "double prosecutions for the same offense are so contrary to the spirit of our free country that they violate even the . . . Fourteenth Amendment." *Bartkus, supra* at 150-151 (Black, J., dissenting).

Justice Black recognized that, from an individual's perspective, multiple punishments inflict the same injustice whether levied by officers wearing one uniform or several. "In each case . . . [one] is forced to face danger twice for the same conduct." *Bartkus, supra* at 155 (Black, J., dissenting).

It is incompatible with fundamental justice that a person who has already faced trial in another court system should again be exposed to jeopardy in Michigan's courts. The dual threat from the single act is "repugnant to the conscience of mankind." See *Palko, supra* at 323. If the essence of due process, fairness, is to be recognized, one of its features must be this guarantee: a person may be

exposed to the gauntlet of criminal proceedings only once for the same misconduct.

It does not matter to the individual that two separate sovereigns are responsible for the proceedings. What matters is that the government has resources and power the individual does not. Therefore, the government should not be

> allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [*Green, supra* at 187-188.]

The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires a recognition that subjecting an individual to a second trial violates the fundamental fairness due every citizen of the United States.

### V. The Doctrine of Stare Decisis

> "[*S*]*tare decisis* 'promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" [*United States v Int'l Business Machines Corp*, 517 US 843, 856; 116 S Ct 1793; 135 L Ed 2d 124, (1996), quoting *Payne v Tennessee,* 501 US 808, 827; 111 S Ct 2597; 115 L Ed 2d 720 (1991). See also *People v Petit,* 466 Mich 624, 633; 648 NW2d 193 (2002).]

To overturn a previous decision of this Court, we must be convinced that it was wrongly decided. In addition, we must conclude that greater injury will result from adhering to it than from correcting it. *Petit, supra* at 634, citing *McEvoy v Sault Ste Marie,* 136 Mich 172, 178; 98 NW 1006 (1904). A departure from precedent must be based on a "'"special justification."'" *Dickerson v United States*, 530 US 428, 443; 120 S Ct 2326; 147 L Ed 2d 405 (2000), quoting *Int'l Business Machines Corp, supra* at 856, quoting *Payne, supra* at 842 (Souter, J., concurring), quoting *Arizona v Rumsey*, 467 US 203, 212; 104 S Ct 2305; 81 L Ed 2d 164 (1984).

Nine years ago, Justice Weaver's lead opinion in *Mezy* indicated a desire to overrule *Cooper.* Her position did not gain the support of a majority of the justices. The only change that could explain today's decision to overrule *Cooper* is the change in the make-up of this Court. Justice LEVIN's criticism in *Mezy*[18] of the lead opinion's desire to overrule *Cooper* is just as applicable today as it was when

---

[18] Because three justices indicated that they would overrule *Cooper* even though reaching the issue was unnecessary, three other justices explained why they would not overrule the case. Justice Brickley simply indicated that *Cooper* need not be addressed by the Court.

written.  There has been no intervening showing that *Cooper* was clearly erroneous.

The majority claims that *Cooper* is bad law.  Its reason is that the *Cooper* Court did not apply the doctrine of dual sovereignty as articulated by the United States Supreme Court and that it misconstrued where the United States Supreme Court was headed.

Yet, although *Cooper* alluded to the track the United States Supreme Court appeared to be taking, it specifically noted that its decision was based on the Michigan Constitution.  This majority's constrictive reading of the double jeopardy rights our constitution provides disagrees with the *Cooper* approach.  It overrules *Cooper* without showing in what respect the *Cooper* analysis of our state Double Jeopardy Clause is wrong.

This lack of an explanation is understandable when one considers that there is nothing unworkable about *Cooper.* The majority asserts that less injury will result from overruling *Cooper* than from allowing it to stand.  I believe that less injury will result only if one assumes that everyone accused of a crime is guilty.  More injury will result to those our criminal justice system has been created to protect, those who are falsely accused. Hereafter, if one sovereign prosecutes and the accused is

found not guilty, the sovereign may work with Michigan to achieve what it could not, secure conviction.

The majority's approach ignores the fact that, by overruling a dozen or more cases each term, it destablizies our state's jurisprudence.  It suggests to the public that the law is at the whim of whoever is sitting on the Supreme Court bench. Surely, it erodes the public's confidence in our judicial system.  Less harm would result from retaining *Cooper* than from reversing it.

## VI. Conclusion

Because I believe that *Cooper* provides the correct framework, based on the Michigan Constitution, for resolving double jeopardy concerns, I would affirm the decision of the Court of Appeals.

I disagree with the majority that *Cooper* must fall. The *Cooper* decision was not incorrect when it was decided or when its holding was unanimously reaffirmed by this Court in *Gay*.  It is not incorrect today.  Greater injustices will come from its abandonment than from its retention.

One cannot but wonder if this departure from precedent will encourage the people of Michigan to "adjust themselves to all other violations of the Bill of Rights should they

30

be sanctioned by this Court." *Bartkus, supra* at 163 (Black, J., dissenting).

Overturning *Cooper* strikes at the integrity of our justice system. It represents a greater threat to public security than it does a protection from criminals. The decisions in *Cooper* and *Gay* and the Court of Appeals decision in this case should be upheld.

Marilyn Kelly

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                            No. 125436

GEVON RAMON DAVIS,

    Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

I concur with the result reached by Justice Kelly in her dissent. I also fully concur with the reasoning articulated in parts IV, Fourteenth Amendment Due Process, and V, The Doctrine of Stare Decisis, of Justice Kelly's opinion.

                                  Michael F. Cavanagh