**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 17, 2002

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                   No. 119348

LINDA PETIT,

Defendant-Appellant.

---

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal in this case to consider whether defendant must be resentenced because the trial court did not specifically ask defendant if she wished to allocute, that is, speak on her own behalf, before she was sentenced pursuant to a sentence agreement. The Court of Appeals denied leave to appeal. We conclude that defendant was given an opportunity to allocute as required by MCR 6.425(D)(2)(c). Accordingly, we affirm defendant's sentence.

## I. FACTS AND PROCEDURAL HISTORY

Defendant was charged with first-degree murder and felony-firearm for the shooting death of her sister. Pursuant to a plea agreement, defendant pleaded nolo contendere but mentally ill to second-degree murder and felony-firearm. In return, it was agreed that defendant would be sentenced to 16½ to 40 years for second-degree murder, plus two years for felony-firearm.

At the sentencing hearing, defendant's attorney allocuted on defendant's behalf. The court also heard from the victim's daughter. Although the court asked if there was "anything further" before it imposed sentence pursuant to the agreement, and defense counsel specifically responded, "No, Judge," the court did not specifically ask defendant if she had anything to say on her own behalf before the court sentenced her.

Defendant argues that this failure violated MCR 6.425(D)(2)(c), and thus that she is entitled to be resentenced. The Court of Appeals denied leave to appeal. This Court subsequently granted leave to appeal. 465 Mich 942 (2002).[1]

---

[1] We granted leave to appeal in this case in order to consider

whether the failure to afford the defendant an opportunity to allocute at sentencing is harmless error in light of the fact that the sentence to be
(continued...)

## II. STANDARD OF REVIEW

This case presents an issue involving the interpretation of a court rule, which, like a matter of statutory interpretation, is a question of law that we review de novo. *CAM Construction v Lake Edgewood Condominium Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002).

## III. ANALYSIS

MCR 6.425(D)(2)(c), the court rule that defendant alleges the trial court violated at sentencing, provides in relevant part:

> At sentencing the court, complying on the record, must:
>
> * * *
>
> (c) give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence . . . .

As is apparent, this straightforward rule requires the trial court to provide a defendant an "opportunity" to address the court before the sentence is imposed. At issue here is whether defendant had such an opportunity. We conclude that

---

[1](...continued)
imposed was a part of the guilty plea agreement. See *People v Berry*, 409 Mich 774 (1980).

However, because we conclude that the trial court here *did* afford defendant an opportunity to allocute at sentencing, as required by MCR 6.425(D)(2)(c), and thus that there was no error, we do not reach the question of harmless error.

3

she did.

It is well established that we interpret the words of a court rule in accordance with their "everyday, plain meaning." *CAM Construction, supra* at 554, quoting *Grievance Administrator v Underwood*, 462 Mich 188, 194; 612 NW2d 116 (2000). "Opportunity" is commonly defined as:

> 1. an appropriate or favorable time or occasion. 2. a situation or condition favorable for attainment of a goal. 3. a good position, chance, or prospect, as for success. [*Random House Webster's College Dictionary* (1995).]

Accordingly, this court rule means that the trial court must make it possible for a defendant who wishes to allocute to be able to do so before the sentence is imposed. However, in order to provide the defendant an opportunity to allocute, the trial court need not "specifically" ask the defendant if he has anything to say on his own behalf before sentencing. The defendant must merely be given an opportunity to address the court if he chooses.

In this case, although the court did not specifically ask defendant if she wished to allocute, it did ask if there was "anything further?" and defense counsel said, "No, Judge." While it is unclear to whom this question was addressed, it is clear that defendant's counsel responded to the court's inquiry by indicating that there was, in fact, nothing further

4

to say.[2]  At this juncture, defendant had the option, that is, the opportunity, of addressing the court, and she was not precluded or prevented from doing so.

In our judgment, the trial court's failure to specifically ask defendant if she had anything to say did not violate MCR 6.425(D)(2)(c) because this rule simply does not require such a personal and direct inquiry.  It is noteworthy that some of our court rules do require the court to personally address the defendant, see, e.g., MCR 5.941(C) (requiring the court to "personally address the juvenile"); MCR 6.302(B) (requiring the court to "speak[] directly to the defendant"); MCR 6.402 and MCR 6.410 (requiring the court to "address[] the defendant personally").  To give meaning to those instances where our court rules require the court to directly address the defendant and to those rules, like that at issue here, where they do not, we conclude that MCR 6.425(D)(2)(c) only requires that the opportunity to allocute

_____

[2] We would like to point out that we do not, as the dissent asserts, conclude that "defense counsel's response indicates that defendant had nothing to say." *Post* at 3.  As the dissent acknowledges, "[t]he record provides no basis, aside from speculation," to conclude that defendant did not have anything to say. *Id.*  However, the inverse is also true; that is, the record provides no basis, aside from speculation, to conclude that defendant *did* have something to say. Further, the issue here is not whether defendant had something to say, but rather, whether defendant had the *opportunity* to say something, and we conclude that defendant did have such an opportunity.

5

be given.  Accordingly, in our judgment, the trial court here complied with the rule by generally asking if there was "anything further."[3]

We are reinforced in our conclusion that we have given the proper reading to MCR 6.425(D)(2)(c) by reference to the United State Supreme Court's handling of a similar matter in *Green v United States*, 365 US 301; 81 S Ct 653; 5 L Ed 2d 670 (1961).  *Green* arose out of a dispute concerning an analogous federal rule covering sentencing in the federal courts.[4]  In *Green*, the trial court asked, "Did you want to say something?" *Id.* at 302.  As in our case, it is unclear to whom this question was directed.  However, also as in our case, it is

---

[3] Although we conclude that the trial court here did comply with the court rule, we note that asking generally if there is "anything further" is certainly not the best way to provide a defendant with an opportunity to allocute.  Rather, the best way to provide such an opportunity is to specifically ask the defendant if he has anything to say.

The dissent emphasizes that to require a specific inquiry would establish a bright line rule that would be easy to understand and easy to apply.  *Post* at 2-3.  While this is unquestionably true, we do not agree that such a specific inquiry is necessarily required by the court rule.

[4] Fed R Crim P 32(a), in effect at the time *Green* was decided, required the trial court to provide the defendant with an "opportunity" to allocute.  Fed R Crim P 32(a) provided:

> Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment.

6

clear that it was the defendant's counsel who responded to the court's inquiry.

Faced with the claim that these trial court proceedings were not in compliance with Fed R Crim P 32(a), the United States Supreme Court first noted that "[i]f Rule 32(a) constitutes an inflexible requirement that the trial judge specifically address the defendant, e.g., 'Do you, the defendant, Theodore Green, have anything to say before I pass sentence?' then what transpired in the present case falls short of the requirement." *Id*. at 303. However, the Court ultimately concluded that such a personal and direct inquiry is not necessary to provide the defendant with an opportunity to allocute. Accordingly, the Court provided, "we do not read the record before us to have denied the defendant the *opportunity* to which Rule 32(a) entitled him. The single pertinent sentence—the trial judge's question 'Did you want to say something?—may have been directed to the defendant and not to his counsel."[5] *Id*. at 304 (emphasis added). On these facts, the Court concluded that the judge's question afforded the defendant a sufficient opportunity to allocute, and thus

[5] The Court noted that perhaps there was a "significant cast of the eye or [a] nod of the head" that would not be apparent from the record. *Green, supra* at 304-305.

the court rule was not violated.[6]

We are aware that our construction in *People v Berry*, 409 Mich 774; 298 NW2d 434 (1980), of the former version of this court rule, GCR 1963, 785.8, is inconsistent with our interpretation of the current version, MCR 6.425(D)(2)(c). GCR 1963, 785.8 provided in relevant part:

> Sentencing.  Before sentence is imposed the court shall:
>
> * * *
>
>     (2) give defendant and his lawyer a *reasonable opportunity* to advise the court of any circumstances they believe the court should consider in imposing sentence;
>
> * * *
>
> Provisions of subrule 785.8 are mandatory and

---

[6] Although the Supreme Court concluded that the rule was not violated, it also made clear that "[t]rial judges before sentencing should, as a matter of good judicial administration, unambiguously address themselves to the defendant.  Hereafter trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." *Id*. at 305.  Accordingly, the federal rule has since been revised to provide:

> Before imposing sentence, the court must:
>
>     (C) address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence.  [Fed R Crim P 32(c)(3).]

We also would urge trial courts, as a better practice, to specifically ask the defendant if he has anything to say on his own behalf before sentencing because this is the surest way of demonstrating compliance with MCR 6.425(D)(2)(c).

8

*failure to comply shall require resentencing.* [Emphasis added.]

In *Berry*, this Court concluded that GCR 1963, 785.8

> requires strict compliance and should be understood in all cases to require the trial court to inquire specifically of the defendant separately whether he or she wishes to address the court before the sentence is imposed.[7] [*Id*. at 781.]

Additionally, we provided that, under this rule, a defendant must be given a reasonable opportunity to allocute, even where the court sentences the defendant pursuant to a sentence agreement. *Id*. at 780-781.

The principal difference between the former and the present court rule is that the latter no longer provides that "failure to comply shall require resentencing."[8]

> The provision . . . declaring that a failure to comply with the provisions of that subrule "shall require resentencing" was deleted from this subrule [in 1989]. Whether failure to comply with a provision in this subrule will entitle a defendant to resentencing [now] depends on the nature of the noncompliance and must be determined by reference to past case law or on an individual

---

[7] In order to "inquire specifically of the defendant," the court would have had to personally address, and directly ask, the defendant, "do you have anything to say before you are sentenced?" See *Green, supra* at 303.

[8] Although the dissent points out that under common law, reversal was required when a court failed to invite a defendant to speak before sentencing, *post* at 2, such a reversal is no longer automatically required under the current court rule.

case basis. [MCR 6.425, 1989 Staff Comment.][9]

Further, while the former rule required the court to provide a defendant with a "reasonable opportunity" to allocute, the current rule requires the court to provide a defendant with an "opportunity" to allocute.[10]

As noted above, in our interpretation of the former rule, we required that the trial court "specifically" ask the defendant if "he or she wishes to address the court before the sentence is imposed."[11]  *Berry, supra* at 781.  However, we no longer believe that such a specific inquiry is required because the straightforward language of the court rule simply requires a trial court to provide a defendant with an opportunity to allocute.  Such language cannot be read to require the court to "specifically" ask the defendant if he

---

[9] We note that this staff comment is not part of the text of the court rule, nor is it a binding interpretation of the rule.  *People v Grove*, 455 Mich 439, 456; 566 NW2d 547 (1997).

[10] We are not at all sure what the significance is, if any, of the deletion of the word "reasonable" in the current rule.  A rule requiring an "opportunity" to allocute, in our judgment, necessarily implies a "reasonable opportunity" to allocute.

[11] In *Berry, supra* at 781, this Court simply stated that "[t]he rule . . . should be understood in all cases to require the trial court to inquire specifically of the defendant separately whether he or she wishes to address the court before the sentence is imposed."  It came to this conclusion without addressing the meaning of the term "opportunity," and, therefore, without addressing whether that was required, in its judgment, in order to provide a defendant with an "opportunity" to allocute.

10

has anything to say before being sentenced. It merely requires that the defendant be presented with an opportunity to allocute. Accordingly, we overrule *Berry* to the extent that its construction of former rule GCR 1963, 785.8 is inconsistent with our interpretation of MCR 6.425(D)(2)(c).

## IV. STARE DECISIS

It is well established that overruling precedent must be undertaken with caution. The application of stare decisis is generally "'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Robinson v Detroit*, 462 Mich 439, 463; 613 NW2d 307 (2000), quoting *Hohn v United States*, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998).[12] "However, stare decisis is not to be applied mechanically to forever prevent the Court from overruling earlier erroneous decisions . . . ." *Id*. at 463.

Rather, when a court errs by misconstruing a court rule, a subsequent court should not blindly apply such a misconstruction on the basis of the doctrine of stare decisis, but should instead overrule the earlier court's

---

[12] "Stare decisis" is defined as "[t]o abide by, or adhere to, decided cases." Black's Law Dictionary (6th ed).

11

misconstruction. *Id.* at 467. We must keep in mind that "stare decisis is a 'principle of policy' rather than 'an inexorable command.'" *Id.* at 464 (citations omitted). Accordingly, "this Court will not close its eyes to a possible error it may have committed in the past." *Wilson v Doehler-Jarvis*, 358 Mich 510, 514; 100 NW2d 226 (1960).

However, "[b]efore this court overrules a decision deliberately made, it should be convinced not merely that the case was wrongly decided, but also that less injury will result from overruling than from following it." *McEvoy v Sault Ste Marie*, 136 Mich 172, 178; 98 NW 1006 (1904). In this regard, courts must consider:

> (a) whether the earlier decision was wrongly decided, and (b) whether overruling such decision would work an undue hardship because of reliance interests or expectations that have arisen. [*Robertson v DaimlerChrysler Corp*, 465 Mich 732, 757; 641 NW2d 567 (2002).]

With regard to the first inquiry, we believe, as we have already observed, that *Berry* was wrongly decided. The court rule provides simply that the trial court must provide a defendant with an opportunity to allocute before being sentenced, while *Berry* concluded that the court must "specifically" ask the defendant whether he has anything to say before being sentenced. However, in our judgment, such a personal and direct inquiry is not required by the court rule.

12

Rather, the court rule simply requires the court to provide a defendant with an opportunity; it says nothing about personally addressing the defendant or speaking directly to the defendant.

With regard to the second inquiry, we must examine "whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Robinson, supra* at 466. We conclude that the decision in *Berry* has not become so fundamental that overruling it will interfere with any legitimate reliance or expectation interests. "[T]o have reliance, the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event." *Id.* at 467. Our decision in *Berry* cannot be said to have caused defendants to alter their conduct in any way. Therefore, our decision here will create no "practical real-world dislocations."

Because of our decision in *Berry*, courts are now in the practice of specifically asking defendants if they have anything to say before sentencing. We agree with the United States Supreme Court that this is the best of practices because it will "leave no room for doubt" that the defendant has been provided the required opportunity to allocute. See

*Green, supra* at 305. Accordingly, trial courts should continue this practice because it is the most certain way to ensure that they have acted in compliance with MCR 6.425(D)(2)(c).

For these reasons, we conclude that *Berry* was wrongly decided and overruling it will not interfere with legitimate reliance or expectation interests. Accordingly, after considering the imperatives of stare decisis, we believe that it is appropriate here to overrule *Berry* to the extent that its construction of former rule GCR 1963, 785.8 is inconsistent with our interpretation of MCR 6.425(D)(2)(c).[13]

V. CONCLUSION

That the trial court is required to provide a defendant with an opportunity to allocute means only that the trial court must allow the defendant a chance to speak on his own behalf before being sentenced. This does not mean that the trial court must specifically ask the defendant whether he wishes to allocute, although this would be the most certain way to ensure that all defendants who do want to allocute on

---

[13] The dissent concludes that the trial court's general inquiry was not sufficient under *Berry* because *Berry* requires a specific inquiry, and thus resentencing is required. *Post* at 1. Although we agree with the dissent that the trial court's inquiry was not sufficient under *Berry*, we conclude that the trial court's inquiry did comply with the plain language of the court rule, and that is all that the trial court was required to do. Accordingly, there is no need to remand for resentencing.

14

their own behalf are, in fact, given the opportunity to do so. In this case, defendant was given the opportunity to address the court when the court asked if there was "anything further." Accordingly, the trial court complied with the requirement of MCR 6.425(D)(2)(c), and thus we affirm the sentence imposed on defendant by the trial court.

CORRIGAN, C.J., and CAVANAGH, WEAVER, TAYLOR, and YOUNG, JJ., concurred with MARKMAN, J.

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                   No. 119348

LINDA PETIT,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

    I disagree with the majority's conclusion that defendant had the opportunity envisioned by MCR 6.425(D)(2)(c) to address the court before sentencing.  This decision is an unfortunate departure from precedent.

    We held in *People v Berry*[1] that compliance with the right of allocution requires the sentencing court to specifically address the defendant.  The trial judge's general inquiry of "anything further" directed apparently at no one in particular was not sufficient under *Berry* or under the principles that

_____

[1]409 Mich 774; 298 NW2d 434 (1980).

gave rise to it. Therefore, I would remand the case to the sentencing court for proper allocution and resentencing.

The right of allocution is deeply embedded in this country's criminal jurisprudence. As early as 1689, the common law acknowledged that reversal is required when a court fails to invite a defendant to speak before sentencing. *Green v United States*, 365 US 301, 304; 81 S Ct 653; 5 L Ed 2d 670 (1961); *United States v De Alba Pagan*, 33 F3d 125, 129-130 (CA 1, 1994). The right of allocution is designed to temper punishment with mercy and to ensure that sentencing reflects individualized circumstances. Its value lies in maximizing the perceived equality of the process. *Id.* at 129.

In keeping with these principles, we announced in *Berry* in 1980 that the right of allocution is "an important and integral aspect of the truth-discovery purpose of the criminal justice process . . . ." *Berry, supra* at 780-781. The right provides a defendant with an opportunity to make a statement in mitigation, extenuation, or justification of the crime for which a sentence is being imposed. *Id.* at 780. Nothing has occurred during the intervening twenty-two years to alter those truths. *Berry* was not wrongly decided.

It established a bright line rule easily applied by the courts. It avoided litigation in cases, as in the case before us, where the record is ambiguous about whether a defendant

2

was given an intelligible opportunity to address the sentencing judge. The *Berry* rule guaranteed defendants a fair and meaningful opportunity to exercise the right to allocute. It signaled to trial court judges that they should not pronounce sentence before specifically asking whether a defendant wished to speak.

The majority removes this easily understood and easily applied rule for no good reason. It replaces the rule with one that encourages sloppiness and uncertainty in the imposition of sentences.

Despite the majority's acknowledgment that it is unclear whom the sentencing court was addressing here, it concludes that defense counsel's response indicates that defendant had nothing to say. This overlooks the possibility that defendant might have had something to say even if defense counsel was unaware of it or had nothing more to say himself. The record provides no basis, aside from speculation, for concluding otherwise.

The majority's reasoning also ignores the intimidating environment of a courtroom. It ignores the stress of sentencing for a person like defendant who was most certainly about to lose her liberty. It is not reasonable to presume, as does the majority, that a defendant will seize on such a vague inquiry as "anything further" as representing a last

opportunity to address the court before sentencing.

Given the importance of the right of allocution and the flaws present in the sentencing here, the best rule is the longstanding and accepted rule of *Berry.* Because the trial judge failed to specifically inquire of defendant whether she wished to address the court before sentencing, defendant was denied her right to allocute under MCR 6.425(D)(2)(c). I would abide by the rule of stare decisis and remand the case to the sentencing court to give defendant an opportunity to allocute and for resentencing.

4