KELLY, J.
(dissenting). This is another case in which the majority disregards the doctrine of stare decisis. I join Justice CAVANAGH’s well-reasoned dissent. I write separately to strongly disapprove of the majority’s efforts to overturn all caselaw with which it disagrees, however destabilizing the effect may be. This is not a new area of contention among us. I have previously argued that the majority’s willingness to overrule precedent weakens our legal system at its foundation.[1] Because of the importance of the issue, it warrants continuing attention.[2]
I agree with Justice CAVANAGH that People v Preuss and its antecedents correctly held that “multiple con *81 victions arising out of a single incident may count as only a single prior conviction under the statute .. . ,”[3] Obviously, I would not overrule that line of decisions. Yet, aside from this basic disagreement, I am concerned that the majority’s approach to the doctrine of stare decicis tends to turn it on its ear. The majority correctly observes that stare decisis should not be mechanically applied to prevent the overruling of previous caselaw. Then it errs by moving in the opposite direction. In contravention of the purpose of the doctrine, it mechanically applies stare decisis to permit the overruling of every case it believes was incorrectly decided.
Stare decisis is short for stare decisis et non quieta movere, which means “stand by the thing decided and do not disturb the calm.” It has been a part of American jurisprudence since the country was founded.[4] Alexander Hamilton wrote that to “avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents which serve to define and point out their duty in every particular case that comes before them . . . .”[5] Early in the twentieth century, Justice (then-judge) Cardozo wrote that the “labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case, and one could not lay one’s own course of bricks on the secure foundation of the courses laid by others who had gone before him.”[6]
*82 The present majority on this Court has adopted what are commonly known as the “Robinson factors” to discern whether precedent should be overruled.[7] “In determining whether to overrule a prior case, this Court first considers whether the earlier case was wrongly decided.”[8] But that is only the first step that must be taken. The Court must then examine (1) whether the decision remains workable, (2) the degree of reliance on the decision, and (3) whether changes in the law or facts have undermined the basis of the decision.[9] While this analysis appears straightforward, applying it can be difficult.
First, as demonstrated by the instant case, the justices of this Court often disagree about whether a previous decision was incorrectly decided. Yet, in this Court’s post -Robinson cases, if a majority concludes that the previous decision was wrong, it will likely be overruled.[10] The remainder of the Robinson analysis appears to be gratuitous. For instance, in the area of criminal law, the majority has held that reliance interests simply are not implicated.[11] In addition, the major *83 ity often merges the reliance prong with the initial determination of whether the precedent was correctly decided. This last point effectively eviscerates the reliance prong of the Robinson analysis, because a “wrong” decision supposedly can never generate reliance.[12] The predictable result of the majority’s current approach is that, once a party meets its initial burden of demonstrating that a prior decision was wrong, the precedent is overturned.
This result flies in the face of the doctrine of stare decisis. Key to the doctrine is the concept that some precedent should be upheld notwithstanding its flaws.[13] *84 As stated by Justice Brandéis: “Stare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right.”[14]
Relying on caselaw from the United States Supreme Court, many commentators suggest that there exists a hierarchy of precedents. Under this hierarchy, stare decisis applies differently to different areas of the law.[15] The hierarchy approach gives the greatest weight to statutory precedents.[16] It states that caselaw interpreting statutes should rarely be overturned because the Legislature is the appropriate branch of government to correct an erroneous interpretation.[17]
*85 Even if one rejects the hierarchy approach, the overruling of precedent requires some special justification.[18] The current majority of the Michigan Supreme Court, however, has ignored this broadly acknowledged requirement.[19] While Robinson borrowed its analysis directly from federal law, it failed to incorporate the special-justification requirement that permeates that body of law.[20] “The most significant aspect of this ‘special justification’ approach is that it requires more than a conviction that the challenged precedent was wrongly decided.”[21] Requiring a special justification also promotes predictability in the Court’s application of stare decisis by making it more difficult to apply the doctrine selectively.
In the instant case, the majority overrules longstanding caselaw interpreting a statute without any special justification. The majority simply concludes that the earlier caselaw was incorrectly decided, and, because the caselaw interpreted a criminal statute, no reliance interests are implicated. According to the majority, the habitual offender statutes clearly apply to multiple offenses committed on one occasion. As Justice CAVANAGH explains, this contradicts more than 150 years of precedent.[22]
The majority claims that it relies on the 1978 amendment of the habitual offender statutes. It refuses to *86 comment on “the correctness of any court’s interpretations of the pre-1978 versions of the statutes.”[23] Willful ignorance of prior caselaw does not make it disappear. Contrary to the majority’s assertion, the post-1978 language of the habitual offender statutes does not clearly apply to multiple offenses committed on one occasion. Rather, the language of the habitual offender statutes is at least equally supportive of the conclusion that the statutes are inapplicable to multiple convictions arising from the same act. This is because they set out a “system of graduated enhancements for subsequent felonies . .. ,”[24]
Accordingly, the 1978 amendments did not alter the command that “multiple convictions arising out of a single incident may count as only a single prior conviction under the statute .. . .”[25] Because the amended statutory language does not compel the result reached by the majority, it is appropriate to consider this Court’s understanding of the preamendment statutory language. This long history should not be ignored simply because it does not suit the majority’s analysis.
Nor is it illogical or inconsistent to stand by Preuss even though Preuss itself rejected, in part, People v Stoudemire.[26] Preuss held, contrary to some of the reasoning articulated in Stoudemire, that the habitual offender statutes did not require that a prior conviction be separated by intervening convictions or sentences.[27] However, Preuss specifically maintained Stoudemire’s holding that a defendant’s prior offenses must arise *87 from separate incidents.[28] Thus, Preuss and Stoudemire are controlling precedent on the point in issue.[29]
The majority asserts that binding courts to a strict-constructionist view of statutory interpretation ensures that courts are not arbitrary in their decision-making. The majority’s decision in this case belies that claim. The statutory language at issue does not necessarily lead to the conclusion reached by the majority. Nonetheless, the majority is willing to change a longstanding rule of law that conflicts with its interpretation. Frequently, fair-minded people will disagree about what the language of a statute requires. Just because a majority of the justices on this Court proclaims a statute free from ambiguity does not make it so. This is precisely why it is so important that something more than a notion that 'an earlier case was incorrectly decided should be required before precedent is overruled.
Stare decisis is not an ironclad mandate. Because justices sometimes err, it is appropriate for us to reconsider earlier decisions.[30] When we do so, however, stare decisis requires that we give those decisions thoughtful and thorough consideration before tossing them aside. Our decision about whether an earlier case must be overruled should be guided by more than a notion that the case was incorrectly decided.[31]
*88 In the matter before us, I would uphold Preuss, because it was correctly decided. Moreover, the doctrine of stare decisis dictates that it be upheld. Preuss remains workable, and no changes in the law or facts have undermined it. No special circumstances exist indicating that it should be overruled. Because Preuss interpreted statutory law, the Court should be especially hesitant to overrule it. If Preuss misinterpreted legislative intent, the Legislature can amend the habitual offender statutes to permit their application to multiple *89 offenses committed on one occasion.[32] Preuss is free from absurdity, not mischievous in practice, and is consistent with other adjudications of this Court.[33] For these reasons, as well as those articulated by Justice Cavanagh, I dissent.

 See, e.g., Rowland, v Washtenaw Co Rd Comm, 477 Mich 197, 253-257; 731 NW2d 41 (2007) (Kelly, J., concurring in part and dissenting in part).

 See Welch v Texas Dep’t of Hwys & Pub Transportation, 483 US 468, 494; 107 S Ct 2941; 97 L Ed 2d 389 (1987) (opinion of Powell, J.) (“[T]he doctrine of stare decisis is of fundamental importance to the rule of law.”).

 People v Preuss, 436 Mich 714, 720; 461 NW2d 703 (1990).

 The doctrine can be traced back to medieval England. Healy, Stare decisis as a constitutional requirement, 104 W Va L R 43, 56-62 (2001). It assumed its modern form in the late eighteenth and early nineteenth centuries. Id. at 55.

 The Federalist No. 78, p 471 (Alexander Hamilton) (Clinton Rossiter ed, 1961).

 Benjamin N. Cardozo, The Nature of the Judicial Process (New Haven: Yale University Press, 1921), p 149.

 Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000).

 Rowland, 477 Mich at 214, citing Robinson, 462 Mich at 463-468.

 Robinson, 462 Mich at 464.

 See, e.g., Rowland, 477 Mich at 215 n 13 (stating that the Robinson factors did not counsel against overruling precedent); Paige v Sterling Hts, 476 Mich 495, 512 n 21; 720 NW2d 219 (2006) (stating that “the only instances in which we might decline to overrule [erroneous precedent]” is when doing so would produce chaos) (emphasis added); People v Nutt, 469 Mich 565, 591; 677 NW2d 1 (2004) (concluding that the Court is compelled to overrule erroneous precedent); People v Hickman, 470 Mich 602, 610 n 6; 684 NW2d 267 (2004) (noting that no special justification is necessary to overrule erroneous precedent); People v Petit, 466 Mich 624, 633-634; 648 NW2d 193 (2002) (stating that courts should overturn erroneous decisions).

 Ante at 62; see also People v Kazmierczak, 461 Mich 411, 425; 605 NW2d 667 (2000) (implying that reliance is not worthy of “sympathy” in *83 the criminal context). The majority fails to recognize that criminals are not the only people who rely on criminal statutes. For instance, legislators appropriate funds for the Department of Corrections on the basis of predictions of how many individuals will be incarcerated. The majority’s new interpretation of the habitual offender statutes could render previous calculations inaccurate and appropriations insufficient because criminals will now be subject to lengthier prison terms.

 See Pohutski v City of Allen Park, 465 Mich 675, 694; 641 NW2d 219 (2002), quoting Robinson, 462 Mich at 467 (“ ‘[Sjhould a court confound . .. legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court’s misconstruction.’ ”).

 See Hubbard v United States, 514 US 695, 716; 115 S Ct 1754; 131L Ed 2d 779 (1995) (Sealia, J., concurring in part) (stating that the decision to overrule must be supported by “reasons that go beyond mere demonstration that the overruled opinion was wrong [otherwise the doctrine would be no doctrine at all]”); Allied-Bruce Terminix Cos, Inc v Dobson, 513 US 265, 283-284; 115 S Ct 834; 130 L Ed 2d 753 (1995) (O’Connor, J., concurring) (reiterating her view that the majority had been wrong in deciding the same issue in a previous case but joining the majority in this case because there was no special justification to overrule it); Mathews v United States, 485 US 58, 66-67; 108 S Ct 883; 99 L Ed 2d 54 (1988) (Brennan, J., concurring) (“I write separately only because I have previously joined or written four opinions dissenting from this Court’s holdings that the defendant’s predisposition is relevant to the entrapment defense. ... Were I judging on a clean slate, I would still be inclined *84 to adopt the view that the entrapment defense should focus exclusively on the Government’s conduct. But I am not writing on a clean slate; the Court has spoken definitively on this point. Therefore, I bow to stare decisis....”); Scott v Illinois, 440 US 367, 374-375; 99 S Ct 1158; 59 L Ed 2d 383 (1979) (Powell, J., concurring) (“Despite my continuing reservations about the Argersinger rule, it was approved by the Court in the 1972 opinion and four justices have reaffirmed it today. It is important that this Court provide clear guidance to the hundreds of courts across the country that confront this problem daily. Accordingly, and mindful of stare decisis, I join the opinion of the Court.”).

 Burnet v Coronado Oil & Gas Co, 285 US 393, 406; 52 S Ct 443; 76 L Ed 815 (1932) (Brandeis, J., dissenting).

 See, e.g., Sinclair, Precedent, super-precedent, 14 Geo Mason L R 363, 368-370 (2007); Sellers, The doctrine of precedent in the United States of America, 54 Am J Comp L 67, 68-69, 84-85 (Supp, 2006); Eskridge, Overruling statutory precedents, 76 Geo L J 1361, 1362-1363 (1988); Barrett, Statutory stare decisis in the courts of appeals, 73 Geo Wash L R 317 (2005).

 Neal v United States, 516 US 284, 295; 116 S Ct 763; 133 L Ed 2d 709 (1996); Patterson v McLean Credit Union, 491 US 164, 172-173; 109 S Ct 2363; 105 L Ed 2d 132 (1989); Illinois Brick Co v Illinois, 431 US 720, 736; 97 S Ct 2061; 52 L Ed 2d 707 (1977); see also Fisher, Statutory construction: Keeping a respectful eye on Congress, 53 SMU L R 49, 51-52 (2000); Barrett, 73 Geo Wash L R at 320-321 (2005).

 As stated by the United States Supreme Court: “Considerations of stare decisis have special force in the area of statutory interpretation, for *85 here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done.” Patterson, 491 US at 172-173.

 Id.; Arizona v Rumsey, 467 US 203, 212; 104 S Ct 2305; 81 L Ed 2d 164 (1984); People v Hickman, 470 Mich 602, 617 n 6; 684 NW2d 267 (2004) (Kelly, J., dissenting); see also Note, The unworkable unworkability test, 80 NYU L R 1665, 1669-1670 (2005).

 See Hickman, 470 Mich at 617 n 6 (Kelly, J., dissenting).

 Robinson, 462 Mich at 463-464.

 Note, 80 NYU L R at 1670 (2005).

 Ante at 70 n 1, 78.

 Ante at 65.

 Ante at 72.

 Preuss, 436 Mich at 720.

 People v Stoudemire, 429 Mich 262; 414 NW2d 693 (1987).

 Preuss, 436 Mich at 738-739.

 Id. at 737.

 Whether Preuss correctly rejected Stoudemire’s reasoning concerning the timing of the convictions is not at issue here.

 See Sington v Chrysler Corp, 467 Mich 144, 184; 648 NW2d 624 (2002) (Kelly, J., dissenting).

 The majority relies on Justice Markman’s concurring statement in Rowland to counter my argument that it too freely overturns precedent with which it disagrees. Justice Markman’s primary assertion in Rowland was that our disagreement is less about our esteem for precedent than about the merits of the opinions being overruled. Rowland, 477 Mich at *88 224. He then cited opinions in which I agreed with the precedent that the majority overruled. As I stated in Rowland, “ [t]his amounts to little more than a circumstantial ad hominem logical fallacy.” Id. at 257 n 12 (Kelly, J., dissenting).
Whether I will support precedents with which I disagree is a question not often brought to light but one I regularly confront. In recent years, I have frequently disagreed with the majority on the merits and resolution of issues presented to us. Once I have been outvoted and dissent, I face whether to reiterate my dissent in future cases raising the same issues. Often, I accede to the opinion of the majority For instance, I recently joined the majority opinion in State News v Michigan State Univ, 481 Mich 692; 753 NW2d 20 (2008), even though it cited Michigan Federation of Teachers v Univ of Michigan, 481 Mich 657; 753 NW2d 28 (2008), in which I dissented. Also, in the past 10 years, I have voted to deny leave in cases too numerous to list based on decisions reached by the majority, despite my disagreement with those decisions. This further indicates my frequent willingness to abide by and maintain precedents with which I disagree.
Contrary to Justice Markman’s belief, our respective records demonstrate that our disagreements stem frequently not solely from our view of the merits of issues but from our differing esteem for stare decisis. See Rowland, 477 Mich at 257 n 12 (Kelly, J., dissenting), citing Todd C. Berg, Esq., Overruling Precedent and the MSC, The Justices’ Scorecard, Michigan Lawyers Weekly, November 6, 2006.
The majority’s reference to Justice Markman’s accusations in Rowland concerning my record and views should he seen for what it is, a red herring, a distraction from the main point: the majority is choosing to overrule longstanding precedent in this case, as in so many before it, for wholly inadequate reasons.

 For the reasons stated by Justice Cavanagh, I disagree with the majority’s conclusion that the Legislature has amended the statutes to permit their application to multiple offenses committed on one occasion. Ante at 77-78.

 Rowland, 477 Mich at 255 n 8 (Kelly, J., concurring in part and dissenting in part).