*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

RAYMOND STOKES,

      Defendant-Appellant.

UNPUBLISHED
April 1, 2021

No. 352746
Wayne Circuit Court
LC No. 18-004739-01-FC

Before: MURRAY, C.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendant, Raymond Stokes, appeals by delayed leave granted[1] his nolo contendere plea conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a). Defendant was sentenced to 7 to 15 years' imprisonment. We affirm defendant's conviction, but remand for resentencing as indicated in this opinion and for correction of defendant's judgment of sentence with respect to which version of the Sex Offender Registry Act (SORA), MCL 28.721 *et seq*., governs defendant's reporting and compliance requirements.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Although defendant was not charged until 2018, this case arises out of a sexual assault that occurred in April 2000. The victim was 14-years-old at the time of the assault. One evening in April 2000, the victim went to the home of her much older boyfriend, located near Grove Street and Monica Street in Detroit, Michigan. The victim had just been fired from her job at McDonald's, and arrived at her boyfriend's home between 7:00 p.m. and 8:00 p.m. When the victim arrived at the home, there were between 10 and 20 people there, all drinking alcohol; the victim joined them.

---

[1] *People v Stokes*, unpublished order of the Court of Appeals, entered May 6, 2020 (Docket No. 352746).

At some point, the victim "passed out" on the couch from the alcohol. When the victim awoke, she "found [herself]" in the backroom of the house, naked from the waist down, lying on a mattress. Three men, who were also not fully dressed, including the victim's boyfriend, were with the victim. There were guns in the room, and when the victim attempted to leave, she was told "you can leave when we're done with you." The victim was made to lie on her back, and two of the men laid next to her. One of the men penetrated the victim's vagina with his penis, while the other two men fondled the victim's breast and butt. At one point, the victim was flipped over so she was lying face down on the mattress, and one of the men attempted to insert a finger into her anus.

Following the assault, the victim's boyfriend had one of the men walk the victim home to her mother's house. The victim's mother and her mother's boyfriend took the victim to the hospital where she spoke with Detroit Police officers and underwent a sexual assault examination. During the preliminary examination in this case, the prosecution read into the record a summary of a laboratory report pursuant to MCR 6.202. The laboratory report indicated that during the victim's sexual assault examination, medical professionals collected a vaginal swab, a rectal swab, an oral swab, and two reference samples from the victim. From the vaginal swab, "serological testing for the presence of male DNA was positive, and from the sperm fraction of that vaginal swab a complete DNA profile attributable to Unknown Male Number 1 and suitable for comparison was obtained[.]" A search of the Michigan State Police DNA database indicated an association between the "vaginal swabs sperm fraction and . . . the DNA database specimen information for" defendant. On the basis of the foregoing, the trial court found that the prosecution had established probable cause to believe defendant had committed three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b)(*iii*), and three counts of CSC-III as charged in the felony information.

On May 8, 2019, the trial court held a plea hearing. Defense counsel indicated that the prosecution had offered the following: in exchange for dismissing three counts of CSC-I and two counts of CSC-III, defendant would agree to plead guilty to one count of CSC-III. Defense counsel indicated, however, that defendant wished to enter a no contest plea instead of a guilty plea, reasoning that the assault in this case occurred 19-years-ago, defendant had no recollection of the assault, and defendant wished to avoid civil liability. Over the prosecution's objection, the trial court allowed the no contest plea. A written plea agreement between the parties was signed by the prosecution, defendant, and defense counsel on May 8, 2019. The agreement was placed into the court file. The written agreement indicated that defendant would plead no contest to one count of CSC-III in exchange for a sentence of 7 to 15 years' imprisonment, and "SORA requirements as enumerated in that Act." In exchange, the prosecution would dismiss three counts of CSC-I and two counts of CSC-III.

Defendant was sentenced on May 22, 2019. During the sentencing hearing, defense counsel indicated that he had reviewed the presentence investigation report (PSIR) with defendant, and that the PSIR was factually accurate. However, relevant to this appeal, defense counsel objected to the scoring of prior record variable (PRV) 5 on the basis that defendant had one juvenile misdemeanor, not two, and therefore PRV 5 was scored incorrectly. The trial court indicated that it would "leave PRV 5 at five points over objection."

When it came time to impose a sentence, the prosecution urged the trial court to follow the sentencing agreement. The trial court asked defendant if he would like to say anything, and defendant declined. The trial court did not ask defense counsel if he wished to speak, but rather moved right into sentencing. The trial court sentenced defendant, in accordance with the plea agreement, to 7 to 15 years' imprisonment. The trial court also noted that defendant "must register as required by the Michigan Sex Offender Registration Act and comply with all requirements of the act."

On December 3, 2019, defendant moved in the trial court to withdraw his plea. Defendant argued that he should be permitted to withdraw his plea on the basis of a defect in the plea procedure, and because the plea agreement was illusory. Specifically, defendant argued that the trial court failed to advise him of the maximum possible sentence for CSC-III and failed to confirm on the record with defendant the existence of a plea agreement, and what the terms of that agreement were. Defendant claimed those defects rendered his plea unknowing and involuntary. Defendant claimed that the plea was illusory because it was premised on the idea that defendant would not be subject to lifetime electronic monitoring when, in fact, due to the age of the offense, he would never have been subject to lifetime electronic monitoring.

Defendant argued that, in the alternative, he was entitled to resentencing where his minimum sentencing guidelines range was calculated using inaccurate information; specifically, defendant had been incorrectly assessed five points for PRV 5. Defendant also argued that the trial court had failed to provide defense counsel the opportunity to allocute on defendant's behalf. Finally, defendant argued that his second amended judgment of sentence[2] requires correction to "indicate that he need only comply with terms of [the Sex Offender Registration Act (SORA)] that existed on April 1, 2000." Defendant argued that the SORA reporting requirement constituted ex post facto punishment where the judgment of sentence does not reflect that defendant is only subject to SORA requirements as they existed on the date of the offense, not the date of his plea.

The trial court held a hearing on February 14, 2019. The trial court ultimately denied defendant's motion in full, but clarified that defendant "will be subject to the requirements of SORA at the time of the plea taking[.]" Defendant filed a delayed application for leave to appeal in this Court on February 18, 2020. This Court granted defendant's delayed application on May 6, 2020. See *People v Stokes*, unpublished order of the Court of Appeals, entered May 6, 2020 (Docket No. 352746).

## II. STANDARDS OF REVIEW

On appeal, defendant argues that the trial court abused its discretion by denying his motion to withdraw his plea, and that he is entitled to be resentenced on the basis of accurate information where PRV 5 was incorrectly scored, and where the trial court failed to provide defense counsel

---

[2] The original judgment of sentence, as well as the first amended judgment of sentence, indicated that defendant had pleaded guilty to CSC-III. The second amended judgment of sentence accurately reflects that defendant pleaded no contest to CSC-III.

with an opportunity to allocute on defendant's behalf. Finally, defendant argues that he is entitled to correction of his sentence to clarify any ambiguity regarding his SORA reporting obligations.

A trial court's decision on a motion to withdraw a plea is reviewed by this Court for an abuse of discretion. *People v Cole*, 491 Mich 325, 329; 817 NW2d 497 (2012). "The proper interpretation and application of a court rule is a question of law that is reviewed de novo." *Haliw v Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

With respect to scoring prior record variables, this Court "review[s] for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence[,]" and "reviews de novo whether the factual determinations were sufficient to assess points under" PRV 5. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which [this Court] reviews de novo." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) (quotation marks and citation omitted).

Where defendant argues that defense counsel was denied the right to allocute on defendant's behalf at sentencing in violation of MCR 6.425(E)(1)(c), this Court reviews "de novo the scope and applicability of the common-law right to allocute, also a question of law." *People v Petty*, 469 Mich 108, 113; 665 NW2d 443 (2003), citing *People v Petit*, 466 Mich 624, 627; 648 NW2d 193 (2002).

Finally, where defendant argues that the plea agreement and his judgment of sentence are ambiguous regarding his reporting and registration requirements under SORA, and that if he is subject to the SORA requirements as they existed on the date he entered his plea as opposed to on the date that he allegedly committed the offense underlying his conviction, those requirements violate the Ex Post Facto Clauses of the United States and Michigan Constitutions, this Court reviews constitutional issues de novo. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

III. ANALYSIS

A. MOTION TO WITHDRAW THE PLEA

On appeal, defendant first argues the trial court abused its discretion by denying his motion to withdraw his plea on the basis that defendant's no contest plea was not knowing and voluntary. Specifically, defendant argues: that the trial court failed to comply with MCR 6.302(B)(2) by failing to inform defendant of the maximum possible sentence for CSC-III; the trial court failed to comply with MCR 6.302(C) by failing to ask defendant if there was a signed plea agreement or what the terms of that agreement were; and finally, that the plea agreement was illusory where the prosecution told defendant if he accepted the plea, he would not be subject to lifetime electronic monitoring, even though defendant would not have been subject to lifetime electronic monitoring because of the age of the offense.

-4-

Defendant pleaded no contest to one count of CSC-III, and thus his plea is governed by MCR 6.302; *Cole*, 491 Mich at 330. "A defendant pleading [no contest] must enter an understanding, voluntary, and accurate plea." *People v Brown*, 492 Mich 684, 688-689; 822 NW2d 208 (2012) (footnote and citation omitted); MCR 6.302(A). "To ensure that a plea is accurate, the trial court must establish a factual basis for the plea. In order for a plea to be voluntary and understanding, the defendant must be fully aware of the direct consequences of the plea." *People v Pointer-Bey*, 321 Mich App 609, 616; 909 NW2d 523 (2017) (quotation marks and citation omitted). When a plea is offered pursuant to a plea agreement, "voluntariness depends upon the defendant's knowledge of the actual value of the bargain." *People v Williams*, 153 Mich App 346, 350; 395 NW2d 316 (1986). Trial courts will only grant motions to withdraw no contest pleas after sentencing if there was an "error in the plea proceeding that would entitle defendant to have his plea set aside." MCR 6.310(C)(4).

Defendant argues that he was entitled to withdraw his plea because the trial court failed to inform him of the maximum possible sentence required by law for a CSC-III conviction as is required by MCR 6.302(B)(2). Generally, "a failure to advise a defendant of the maximum possible prison sentence before taking a . . . plea constitutes an error requiring reversal." *People v Brown*, 492 Mich 684, 695; 822 NW2d 208 (2012), citing *People v Jones*, 410 Mich 407, 411; 301 NW2d 822 (1981). However, our Supreme Court limited the application of that rule in *People v Jackson*, 417 Mich 243, 246; 334 NW2d 371 (1983), where it held that "automatic reversal is not required for a failure to give advice concerning the mandatory minimum and maximum sentences if the defendant is sentenced pursuant to a sentencing agreement." *Brown*, 492 Mich at 695 n 36. In this case, the trial court imposed the sentence of 7 to 15 years' imprisonment pursuant to the written plea agreement. Thus, defendant's argument that he is entitled to resentencing on the basis of the trial court's failure to comply with MCR 6.302(B)(2) is without merit.

Next, defendant argues that the trial court failed to comply with MCR 6.302(C) where it did not ask defendant if there was a signed plea agreement and if so, what the terms of that agreement were. However, when a written plea agreement exists, the trial court need not orally place each condition of that plea agreement on the record if the written agreement is incorporated into the record and all other requirements of MCR 6.302(C) are satisfied. See MCR 6.302(C)(1) (emphasis added), which provides that if the parties have made a plea agreement, "the agreement must be stated on the record *or* reduced to writing and signed by the parties."

The written plea agreement in this case, bearing the date of May 8, 2019, was signed by defendant, defense counsel, and the prosecution, and a copy was placed in the case file. Additionally, the terms of the plea agreement were read into the record by defense counsel, and confirmed by the prosecution. The trial court confirmed the plea agreement with defendant during the following exchange:

> *The Court*. And Mr. Stokes, you understand you're here pleading no contest to a charge of criminal sexual conduct in the third degree?
>
> *Defendant*. Yes.

*The Court*.  And you understand that a no contest plea will be treated by me as a plea of guilty for purposes of sentencing? Do you understand that?

*Defendant*.  Yes, Your Honor.

*The Court*.  If I accept your plea, Mr. Stokes, you understand you will not have a trial of any kind?

*Defendant*.  Yes.

*The Court*.  You'll give up the right to be tried by a jury?

*Defendant*.  Yes.

*The Court*.  And to be presumed innocent until proven guilty?

*Defendant*.  Yes, Your Honor.

*The Court*.  To have the Prosecutor prove beyond a reasonable doubt you are guilty?

*Defendant*.  Yes.

*The Court*.  To have witnesses against you appear at the trial?

*Defendant*.  To question witnesses against you?

*Defendant*.  Yes.

*The Court*.  To have me order witnesses to appear at the trial?

*Defendant*.  Yes.

*The Court*.  You give up the right to remain silent during the trial?

*Defendant*.  Yes, Your Honor.

*The Court*.  And to not have your silence used against you?

*Defendant*.  Yes, sir.

*The Court*.  You give up the right to testify at the trial if you wish to testify?

*Defendant*.  Yes.

*The Court*.  If I accept your plea, you may not claim the plea is the result of promises or threats not disclosed to me.

*Defendant*.  Yes, Your Honor.

*The Court.*  And you may not claim it is not your choice to plead no contest.

*Defendant.*  Yes.

*The Court.*  I didn't hear you.

*Defendant.*  Yes.

*The Court.*  If I accept your plea, any appeal of the conviction and sentence will be by application for leave to appeal and not by right.  You understand that?

*Defendant.*  Yes.

Thus, on the record before this Court, we conclude that defendant was made aware of the terms of the plea agreement, that the trial court complied with the requirements of MCR 6.302(B) and (C), and that defendant knowingly and voluntarily entered a no contest plea to one count of CSC-III pursuant to a valid plea agreement.

Defendant also argues that he should be able to withdraw his plea where the plea was illusory.  "A criminal defendant may be entitled to withdraw his or her . . . plea if the bargain on which the . . . plea was based was illusory, i.e., the defendant received no benefit from the agreement."  *Pointer-Bey*, 321 Mich App at 621.  Similarly, "an illusory plea bargain is one in which the defendant is led to believe that the plea bargain has one value when, in fact, it has another lesser value."  *Williams*, 153 Mich App at 351.  In this case, the record supports the prosecution's position that any mention of lifetime electronic monitoring related to defendant's no contest plea was to reinforce that defendant was not subject to electronic monitoring because of the age of the offense.  It is clear from the record before us that defendant did receive the benefit of his bargain where the prosecution agreed to dismiss three CSC-I charges and two CSC-III charges in exchange for defendant pleading no contest to one count of CSC-III and receiving a sentence of 7 to 15 years' imprisonment.  We conclude defendant's claim that his plea agreement was illusory is without merit, where it is neither supported by the facts nor law.

In sum, we conclude that defendant's no contest plea was made knowingly and voluntarily. There was no defect in the plea procedure, and the plea agreement was not illusory.  Thus, we conclude that trial court did not abuse its discretion by denying defendant's motion to withdraw his plea.

## B. RESENTENCING

Next, defendant argues that he is entitled to resentencing where he was sentenced on the basis of inaccurate information, where the trial court failed to provide defense counsel an opportunity to allocute on defendant's behalf, and where he is presently being subjected to the 2019 version of SORA when the sentencing offense occurred in 2000.

We first address defendant's claim that he is entitled to be resentenced where his minimum sentencing guidelines range was calculated using inaccurate information.  Specifically, defendant contests the scoring of PRV 5, and argues that if PRV 5 had been correctly scored it would have lowered his minimum sentencing guidelines range.  However, as discussed *supra*, defendant's

sentence was based on an understanding, willing, and voluntary plea agreement. Our Supreme Court has been clear that a defendant waives "appellate review of a sentence . . . by understandingly and voluntarily entering into a plea agreement to accept that specific sentence." *Wiley*, 472 Mich at 154, citing MCR 6.302 (footnote omitted). Thus, even if PRV 5 had been incorrectly scored, defendant has waived appellate review of this issue and is not entitled to resentencing.

Defendant also argues that he is entitled to resentencing where the trial court failed to comply with MCR 6.425(E)(1)(c) by denying defense counsel the opportunity to allocute on defendant's behalf. MCR 6.425(E)(1)(c) provides

**(E) Sentencing Procedure**

(1) The court must sentence the defendant within a reasonably prompt time after the plea or verdict unless the court delays sentencing as provided by law. At sentencing, the court must, on the record:

\* \* \*

(c) give the defendant, the defendant's lawyer, the prosecutor, and the victim an opportunity to advise the court of any circumstances they believe the court should consider in imposing sentence[.]

A trial court must strictly comply with this rule, and where it fails to do so, resentencing is required. *People v Wells*, 238 Mich App 383, 392; 605 NW2d 374 (1999).

The prosecution concedes in this case that defense counsel was not permitted an opportunity to allocute on defendant's behalf. The prosecution argues that this does not require reversal where defense counsel was not denied an opportunity to allocute, but rather defense counsel was simply not provided with an opportunity. The prosecution argues that defense counsel could have spoken up if he wanted to speak. However, MCR 6.425(E)(1)(c) does not require the defendant, his attorney, the prosecution, or the victim request the ability to allocute; the burden is placed on the trial court to provide the opportunity. Where all parties agree that defense counsel was not provided an opportunity to allocute on defendant's behalf by the trial court, we agree with defendant that resentencing is required. *Wells*, 283 Mich App at 392.

Finally, defendant argues that he is entitled to correction of his sentence where his SORA reporting and compliance requirements are ambiguous. The sentencing agreement reads that defendant is subject to the terms of "SORA as enumerated by [the] Act." Similarly, defendant's second amended judgment of sentence provides that defendant must "REGISTER & COMPLY WITH SORA." The ambiguity exists, defendant argues, because both the plea agreement and the second amended judgment of sentence fail to articulate which version of SORA defendant must comply with: the version of the Act as it existed on April 1, 2000, the date of the offense, or the version of the Act that existed in 2019 when defendant pleaded no contest and was sentenced.

Defendant did raise this issue before the trial court. During the hearing on defendant's motion to withdraw his plea or, in the alternative, for resentencing, the trial court stated on the record that defendant "will be subject to the requirements of SORA at the time of the plea taking."

However, as noted, the second amended judgment of sentence does not reflect that the 2019 version of the Act applies. Where a trial "court speaks through its written orders and judgments, not through its oral pronouncements," *People v Mysliwiec*, 315 Mich App 414, 418 n 2; 890 NW2d 691 (2016), ambiguity remains surrounding which version of the Act dictates defendant's reporting and compliance requirements.

Defendant argues that if he is subject to the reporting and compliance requirements enumerated in the 2019 version of the Act, "the imposition of SORA compliance constitutes a penalty, and application of SORA requirements that were not in place at the time the sentencing offense was committed violates the prohibition against ex post facto penalties." The United States and the Michigan Constitutions prohibit ex post facto laws. U.S. Const, art I, § 10; Const 1963, art I, § 10. Laws constitute ex post facto punishment if they "(1) attach legal consequences to acts [committed] before their effective date, and (2) they work to the disadvantage of the defendant." *Wiley*, 324 Mich App at 152 (quotation marks and citations omitted). "The critical question [for an *ex post facto* violation] is whether the law changes the legal consequences of acts completed before its effective date." *Id*. (quotation marks and citation omitted; alteration in original). "The imposition of a punishment more severe than that assigned by law when the criminal act occurred is a violation of the Constitution's *ex post facto* prohibition." *Id*. at 154 (quotation marks and citation omitted).

Defendant and the prosecution both note in their briefs on appeal that there are two cases currently pending before the Michigan Supreme Court that directly address this issue. See *People v Betts,* 504 Mich 893; 928 NW2d 699 (2019); and *People v Snyder*, 501 Mich 1078; 911 NW2d 467 (2018). Our Supreme Court has heard oral argument, and an opinion will presumably be forthcoming. Where we have already concluded that defendant is entitled to resentencing because defense counsel was not provided an opportunity to allocute on defendant's behalf, we decline to decide at this time which version of the Act with which defendant must comply. The trial court, on remand, will have an opportunity to either clarify the ambiguity at play in this case and amend the judgment of sentence to reflect which version of the Act dictates defendant's reporting and compliance requirements, or hold this matter in abeyance pending our Supreme Court's decision in *Betts* and *Snyder*.

We affirm defendant's conviction, but remand for resentencing as indicated in this opinion and for correction of defendant's judgment of sentence with respect to which version of SORA governs defendant's reporting and compliance requirements. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens